## BENJAMIN R. MORRISON & another *vs.* GILES CHAPIN & another.

In an action wherein the plaintiff set up a claim of title by prescription to real estate, it appeared that the land in dispute was woodland, fenced on three sides, and part of the way on the fourth side, by an ancient fence (by whom erected, and for what purpose, it did not appear), and adjoining open and cleared land on the three sides fenced. *Held*, that the judge rightly refused to rule that the plaintiff " by going upon the lot and cutting wood from all parts of it every year or nearly so, repairing fences, and using the land generally as woodland as one's own, calling it so, the same being a well-understood tract by itself, inclosed by fences on three sides and part of another side, said possession being exclusive, adverse and under a claim of title and continued for twenty years," had acquired the title claimed.

Testimony by a witness to the contents of a lost paper is competent if made from his recollection aided by memoranda made by him while the paper was in his possession, although he has first testified that until he had examined those memoranda he did not recall the paper and that independently of them he could not state its existence or its contents. •

In an action of tort for trespass on real estate wherein the plaintiff's grantor had given testimony tending to prove that he had acquired and conveyed to the plaintiff a title by prescription to the premises in dispute, the record of an action of trespass for an alleged injury to the premises, in which he was defaulted prior to his deed to the plaintiff, is admissible in evidence, in connection with oral testimony that such default was by his agreement, as tending to contradict his testimony, and also as in the nature of an admission in disparagement of title by one with whom the plaintiff as grantee of the premises claimed to be in privity.

A witness on direct examination testified to acts tending to prove that he had acquired title by prescription to certain land. On cross-examination he was asked, Whether, during the period when he claimed to have occupied this land, he had not frequently cut trees " for basket stuff or other purposes " upon land of other persons without regard to who owned the land on which they grew? Having answered this question, he was then asked, Whether or not his use of the land in dispute was not similar to his use of land of other

persons in the particulars referred to in the last interrogatory? to which he replied, " I used the said land for a wood-lot;" and he added, "because I was the owner thereof and entitled to use it at my pleasure." Being further asked, Whether he did not at a certain time agree to refrain from any use of the land until he should first buy and pay for it? he answered, "No. I did not agree to anything more than what is contained in said written agreement;" referring to a certain agreement in evidence in the case; and he added, "but if Clark had, within one month from the date of said agreement, performed the same on his part, I would have had to pay the heirs the sum mentioned in said agreement." *Held,* that these additions were irresponsive and inadmissible.

Tort for trespass on real estate. At the trial in the superior court, before *Wilkinson,* J., it appeared that the land in dispute was woodland, fenced on three sides and part of the way on the fourth by an ancient fence, and having monuments at each of the four corners; that it had for forty years at least been a well-understood distinct piece of land, about five acres in area; and that there was open and cleared land adjoining on the three sides fenced. The plaintiffs, asserting a title derived from Jonathan Morrison by a deed from him in December 1863, and by his alleged possession prior to the deed and their possession since, introduced testimony tending to prove that they and Morrison had acquired title by prescription; by occupying the land as a wood-lot, going to it and over it, cutting and carrying off wood from all parts of it, and repairing the fences and paying taxes for more than twenty years. The defendants, who claimed under a deed to their ancestor prior to these acts, offered evidence tending to contradict this testimony.

The plaintiffs requested the judge to instruct the jury, as matter of law, "that occupancy and possession by them by going upon woodland and cutting wood from all parts of it every year or nearly so, repairing fences, and using the land generally as woodland as one's own, calling it so, the same being a well-understood tract by itself, and inclosed by fences on three sides and part of another side, said possession being exclusive, adverse and under a claim of title, and continued for twenty years, gives a title by prescription."

But the judge declined to give such instruction, and instructed the jury, among other things, that twenty years open, uninterrupted, exclusive and adverse possession would give a valid title to real estate; that it was a question for them upon the evidence,

whether the plaintiffs had acquired such a title; and that, in re-lation to woodland, this court have decided that where land was open, unenclosed woodland, without fence or buildings on it, and uncultivated, the cutting off from time to time of wood for use and sale, the cutting off at one time of all the wood, the clearing of a small piece of the land with a view to cultivation, the running of a line between the premises and other lands of the opposite party, and marking of such line by lopping trees, were not such acts of exclusive adverse possession as would give a title.

Among the plaintiffs' evidence was Jonathan Morrison's de-position, in which he testified that prior to his deed to the plain-tiffs he had been in constant possession of the premises, under a claim of title, for about forty years. It appeared also in evi-dence that in the court of common pleas, at March term 1855 for Franklin, an action of trespass for alleged injury to the premises was brought against the deponent and another by the heirs of one Severance; and Morrison, in his deposition, further testified that the only agreement which he made about the land at the time of that action, was contained in a memorandum in writing, which was produced, dated March 15, 1855, signed and sealed by P. T. Clark and witnessed by H. G. Parker, in which Clark engaged to procure for the deponent "a conveyance of three acres of land belonging to the Severance heirs' estate in Ber-nardston, by deed of warranty," for the consideration of seventy-five dollars, and in default of procuring the same within one month, agreed to procure the dismissal, without costs, of the action of the Severance heirs. On the bill of exceptions in the present action what was the authority, if any, of Clark in con-nection with the Severance heirs, did not appear.

The defendants called Clark as a witness, and he testified that he once had a written agreement, signed by Morrison, and dated in March 1855, and that at or about that time he delivered it to his attorney, H. G. Parker, and had never since seen it or heard of it. Thereupon the defendants called Parker also as a wit-ness, and he testified that he had made search among all his papers and could not find the agreement which Clark delivered

to him, and that he had no remembrance of ever delivering it to any one since he received it; that the whole transaction had passed from his mind, and until he had examined memoranda made by him at that time in his private docket he did not recall it, and independently of these memoranda he could not state the existence of the agreement or its contents. The judge ruled that if from recollection aided by memoranda which he knew to have been made at the time by himself, he could state the contents of the lost paper, he might do so; whereupon he stated that he had no doubt it was an agreement, signed by Jonathan Morrison alone, to be defaulted in the action of the Severance heirs. The testimony of Parker was received under objection throughout from the plaintiffs.

The defendants further offered in evidence the record of the court of common pleas in the action of the Severance heirs, showing that Morrison was defaulted therein, but that no execution was ever issued on the default. The plaintiffs objected to this evidence, and also contended that, if admissible, it was controlled by the written agreement signed by Clark, above recited; but the judge admitted it, and instructed the jury that both it and the Clark agreement were matters proper for their consideration.

In Morrison's deposition, the third cross-interrogatory was, " Did you not from time to time during the period when you claimed to have occupied this land, cut trees for basket stuff or other purposes, upon land of other persons, and did you not frequently cut trees for such purposes, without regard to who owned the land on which they grew ? " And the fourth cross-interrogatory was, " Was not the use of this land similar to your use of lands of other persons in the particulars referred to in the last interrogatory ? " To which last the deponent made answer, " I used the said land for a wood-lot [because I was the owner thereof and entitled to use it at my pleasure]." The seventh cross-interrogatory was, " Did you not in 1854 or 1855 agree to refrain from any acts of trespass upon said land or any use and occupation of it until you should first buy it and pay for it ? " To which the deponent answered, " No. I did not agree to

anything more than what is contained in said written **agreement.** [I could do with the land as I pleased by the terms of said agreement; but if Clark had, within one month from the date of said agreement, performed the same on his part, I would have had to pay the heirs the sum mentioned in said agreement]."

The plaintiffs contended that the whole of these answers was responsive, but the judge excluded those portions of them printed within brackets.

The jury found for the defendants; and the plaintiffs alleged exceptions.

*A. Brainard,* (*W. Griswold* with him,) for the plaintiffs.

*M. P. Knowlton,* for the defendants.

Bigelow, C. J. We can see no valid ground of exception to the several rulings to which objection was taken by the plaintiffs at the trial.

1. The instruction as to the acquisition of a title by disseisin, for which the plaintiffs asked, was rightly refused. The demanded premises consisted of a wood-lot. It had never been entirely inclosed by a fence. A portion of one side had always been open, and the fences on the other sides were erected between the lot in question and land which was cleared, and may have been placed there for the purpose of inclosing these adjacent lots, and not in order to indicate possession and ownership of the wood-lot. Whether the fences had been erected for the latter purpose was a question of fact for the jury in connection with the other evidence in the case. It would have been erroneous for the court to pronounce on its effect as establishing a title by disseisin. Such would have been the result if the request of the plaintiffs had been complied with. The whole evidence bearing on the question of disseisin was rightly left to the jury under instructions which were in conformity to adjudicated cases. *Slater* v. *Jepherson,* 6 Cush. 129. *Coburn* v. *Hollis,* 3 Met. 125. *Ewer* v. *Lovell,* 9 Gray, 276.

2. The testimony of the witness Parker was clearly competent. There was sufficient proof of the loss of the paper to render secondary evidence of its contents admissible. As the case is

stated in the exceptions we must assume that the evidence was given under the rule laid down by the court; that is, from the recollection of the witness aided by memoranda which he knew to have been made by himself contemporaneously with the execution of the written agreement. This is a correct statement of the rule, and the testimony was rightly admitted. 1 Greenl. Ev. § 437.

3. The record of the action against Jonathan Morrison was admissible for two purposes: first, as tending to contradict his testimony which had been introduced by the plaintiff; second, as in the nature of an admission in disparagement of title by one with whom the plaintiffs claimed to be in privity as grantees of the estate in controversy. *Doe* v. *Pettett,* 5 B. & Ald. 223. *Brattle Square Church* v. *Bullard,* 2. Met. 363, 368.

4. Those portions of the answers to certain cross-interrogatories in the deposition of Morrison which were ruled out by the court were not responsive to the questions and were rightly excluded as irrelevant and impertinent.

*Exceptions overruled.*