### LUCIA MORRIS *vs.* JOSEPH F. CALLANAN.

The presumption that real estate descended to heirs is not rebutted by the testimony of a witness that the ancestor left a will, without legal proof of its contents or execution.

On a writ of entry, in which the location of a "line between the inward and outward commons" was in dispute, a deed, more than fifty years old, of land described therein as bounding on an old ditch dividing the inward and outward commons, is competent evidence, (although neither of the parties to the action claims under it,) in connection with other evidence that the line between the commons was an ancient ditch, to prove the location of that line.

On a writ of entry, the tenant relied on a disseisin of the demandant and twenty years' possession thereunder; introduced evidence tending to show an entry on the land, a cutting of wood and timber from year to year over the whole lot, and a clearing and cultivation of a portion thereof, without building upon or inclosing any part of it; and requested the judge to rule that, if the tenant entered upon the land, claiming title and cutting wood and timber from year to year, and held such possession of it undisputed for twenty years, he acquired a good title. The judge declined so to rule, but ruled that "twenty years of open, uninterrupted adverse occupation of land, under a claim of right, would be sufficient to establish a title thereto, but that there could be no adverse use of wild land or woodland." *Held*, that, as applicable to the evidence introduced, the rulings and refusal to rule afforded the tenant no ground of exceptions.

On a writ of entry to recover a parcel of land, the demandant claimed at the trial to recover only five eighths of the land, and the judge instructed the jury that he could only recover so much, but the jury returned a general verdict for the demandant, which was affirmed. *Held*, that the tenant could not object to have the verdict amended so that it should stand for five eighths.

WRIT OF ENTRY to recover " a certain piece of land situate in Agawam," formerly West Springfield, "containing ten acres, more or less, being lot numbered eighteen in the south range of ten acre lots, so called." The tenant pleaded *nul disseisin* as to part of the demanded premises, and disclaimed as to the residue.

At the trial in the superior court, before *Devens*, J., the demandant, to prove her title, put in a deed, dated in 1790, from Israel Williston to Thaddeus Bow, conveying land described as " lot No. 18, lying south of the road formerly leading from Springfield to Westfield ; " a deed from Bow to Justin Granger in 1806, with a similar description ; and a deed from Granger to his four daughters, of whom the demandant was one, conveying a piece of land " containing ten acres, more or less, lying south of the county road and east of the outward common line, running

southerly to the old field, formerly belonging to Thaddeus Leonard."

The demandant then called a witness to prove the decease of the demandant's three sisters without issue, leaving herself and one brother as their heirs at law. The witness also testified, on cross-examination, that one of the sisters was never married, but left a will; and that another, who died subsequently to her husband, also left a will.

The tenant asked the judge to rule that the demandant had shown title to only one quarter of the demanded premises; but the judge declined so to rule, and ruled that the evidence of the existence of the wills was not sufficient to control the presumption that the real estate descended to the heirs at law.

"The tenant denied that lot No. 18 was located where the demandant contended, or that it was bounded west by the outward common line; and the location of the outward common line was in dispute between the parties. For the purpose of showing where the line was located, the demandant, in connection with other evidence to prove that it was an ancient ditch, introduced in evidence, subject to the tenant's objection, a deed from Noah Leonard to Justin Granger, dated in 1814, and recorded in 1870, conveying a tract of land some distance from the demanded premises, described as running northerly on an old ditch which divides between the inward and outward common, so called; and called a witness to prove where that land was located, to wit, about thirty or forty rods from the demanded line."

The tenant claimed title to twenty acres of land, including as a part thereof a portion of what the demandant contended was lot No. 18, and introduced, as evidence of his title, a deed from George Leonard, Jr., to Moses A. Chapin, dated in 1803, of lots Nos. 15 and 16; a deed of the executors of the will of Chapin to Edward Southworth, dated in 1853, of the same lots; a deed of Southworth, dated in 1857, to Blaney B. Callanan, of the same land; and a deed, dated in 1867, from the administrators of Blaney B. Callanan to the tenant.

Heman Smith testified, as a witness, to a survey made by him of the Chapin lot in 1852.

The tenant called, as a witness, Julius Day, who testified " that he was seventy-three years old; that, when he was not more than eight or ten years old, he drove a team to plough a portion of the Chapin lot, some four or five acres near the tenant's house; that it was then planted to corn by Chapin; that he knew of Chapin's cultivating a part of it for several years, and of Chapin's cutting wood and timber on the Chapin lot from year to year, as long as he lived, and never knew of his having any other wood or timber land; that he was interested with Southworth in the purchase of the lot in 1852, had charge of cutting off the wood, and cut over all the land the deed to Southworth covered; that, while he was cutting there, John B. Morris, the husband of the demandant, came and claimed that he had cut beyond the line; that he pointed out the line marked by Smith to Morris; and that Morris went away and said no more about it."

Edward Parsons testified " that he had known the lot now fifty years; that, when he first knew it, a portion near the centre was cleared; that he never knew of Chapin's having any other wood or timber land except this, and had known of his getting wood and timber from time to time from this lot."

The tenant asked the judge to rule, " first, that if Chapin was in possession of the premises, now claimed by the tenant, in 1829, claiming title thereto, then the deed from Granger to his daughters passed no title, and this action cannot be maintained; second, that if Chapin entered upon the land now claimed by the tenant under his deed, claiming title thereto, in 1803, and held possession thereof till his death in 1841, he thereby acquired a title by disseisin, and the demandant's claim is barred by the statute of limitations."

" The judge adopted the first request, subject to the modifications hereafter made and as to the second, ruled that twenty years of open, uninterrupted, adverse occupation of land, under a claim of right, would be sufficient to establish a title thereto; but that there could be no adverse use of wild land or woodland, and that the cutting of wood and timber, or even the cutting off of the entire wood and timber, were not such acts as would disseise the true owner."

The tenant requested the judge to rule that if Chapin entered upon the land under his deed, claiming title thereto, and cutting wood and timber thereon from year to year, and held such possession of it undisputed for twenty years, he thereby acquired a good title. The judge declined so to rule, but ruled as before stated.

The tenant also asked the judge to instruct the jury that the demandant could recover only one fourth of the demanded premises. The demandant contended that she was entitled to recover thirty forty-eighths of the premises. The judge instructed the jury that the demandant, if entitled to recover at all, was entitled to recover thirty forty-eighths of the demanded premises.

The jury returned a verdict for the demandant, which was entered in the following words: " The jury find for the demandant, except as to the part disclaimed by the tenant, and upon that find for the tenant," which verdict was affirmed. Afterwards, on the last day of the term, the demandant filed a motion to amend the verdict, so that it should stand for thirty forty-eighths; the tenant objected, but the judge allowed the amendment. The tenant alleged exceptions.

*C. A. Winchester*, for the tenant.

*H. Morris*, for the demandant.

GRAY, J. The tenant in this case has no ground of exception to the rulings or instructions of the judge who presided in the superior court.

1. As real estate descends to heirs unless the owner devises it otherwise, the presumption of such descent can be rebutted only by legal proof of a will containing such a devise. In this case, no evidence was offered of the contents of the alleged wills, and no competent evidence even of their execution.

2. The ancient deed, made more than fifty years ago, of lands described therein as bounding on an old ditch dividing the inward and outward commons, was competent evidence, (although neither of the parties to this action claimed under it,) in connection with other evidence that the boundary line between those commons was an ancient ditch, to prove the location of that line. *Sparhawk* v. *Bullard*, 1 Met. 95.

3. The testimony introduced by the tenant to prove a disseisin tended to show no more than an entry upon the land in question, a cutting of wood and timber from year to year over the whole lot, and a clearing and cultivation of a portion of the land, without building upon or fencing or otherwise inclosing any part of it. To the extent to which the land had been cleared and cultivated, full effect was given to the disseisin relied on, by the ruling that " twenty years of open, uninterrupted, adverse occupation of land under a claim of right would be sufficient to establish a title thereto." The ruling that " there could be no adverse use of wild land or woodland," considered as stating an abstract rule of law applicable to all cases, could hardly be sustained. But as applied to all the facts which the evidence tended to prove, the tenant has no just cause to complain of that ruling, or of any of the other instructions or refusals to instruct ; for it is well settled in this Commonwealth that merely cutting wood and timber from wild land, and clearing and cultivating a part of it, are no proof of a disseisin beyond that part. *Slater* v. *Jepherson*, 6 Cush. 129.

4. The courts of this Commonwealth have power to allow amendments of verdicts, so as to express in legal form the issue actually tried and necessarily found by the jury. Gen. Sts. c. 129, §§ 34, 41. *Clark* v. *Lamb*, 8 Pick. 415. *Chaffee* v. *Pease*, 10 Allen, 537. By the deed of Justin Granger to his four daughters, each took one fourth of the demanded premises. Upon the deaths of the other three, one half of the share of each, or one eighth of the whole, vested in the demandant, and a like share vested in the surviving brother. The three eighths thus coming to the demandant, added to the quarter originally conveyed to her, made five eighths, or thirty forty-eighths. The jury were therefore rightly instructed that she was entitled to recover that proportion, if anything ; and their general verdict for the demandant (which, as originally returned, would seem to include the whole title to the land in controversy) was rightly amended and reduced by ordering it to stand for that proportion, without affecting so much of the verdict as related to the part disclaimed and as to which no real issue had been made.

*Exceptions overruled.*