## DUDLEY D. HATHAWAY *vs.* BENJAMIN EVANS.

Upon the trial of an issue concerning the location of a disputed boundary line, it appearing from the cross-examination of the plaintiff's witnesses that the plaintiff had a plan of the land having a double line at the disputed boundary, he offered the plan in evidence, but it was rejected. *Held*, that he had no ground of exception, the plan not being competent evidence in itself, and the cross-examination upon it having been upon an immaterial matter.

At the trial of an issue concerning the location of a disputed boundary line between the lots of land of parties claiming title under a division made by warrant of the Probate Court, the division is evidence not only as far as it relates directly to the lots of the parties, but also as far as it gives boundary lines of other lots, from the position of which the disputed boundary line can be determined.

Recitals in ancient deeds are evidence upon questions of boundary to prove the position of a line from the location of which the bound in dispute can be determined.

At the trial of an issue concerning the location of a disputed boundary line between lands of the parties, it being material to determine the location of a part of a town boundary line as originally surveyed, for the purpose of locating the line in dispute, evidence that another portion of the town line as originally surveyed did not agree with the monuments of its present location is inadmissible to prove that the other part of the town boundary line as originally surveyed did not agree with the monuments of its present location.

TORT in the nature of trespass *quare clausum.* The facts are sufficiently stated in the opinion.

DEVENS, J. The parties to this action were owners of adjoining lands, and the question was one of boundary, the *locus* in dispute being a strip about ninety rods in length and three or four rods in width lying between their admitted estates. The plaintiff derived title to his close under a deed from Guilford Hathaway, administrator, to Philip Hathaway, and he put in evidence this deed, and at the trial two or three witnesses for the plaintiff were cross-examined respecting the existence of a plan of the premises thereby conveyed, and also as to whether the said plan showed a double line on the northerly boundary of the plaintiff's premises, this being the line in dispute. By this cross-examina

tion the plan was shown to have been in the plaintiff's possession, and to have a double line upon the northerly boundary of the plaintiff's land. The plaintiff then, before the close of his testimony, offered in evidence the plan referred to, both to show the actual contents thereof and as tending to show where the true line was — supported by his own testimony, that the plan was first seen by him when it was used at an auction sale of the farm described in the deed of Guilford Hathaway, administrator aforesaid, which sale was in 1843, and that he had not seen it again until he found it among his papers two or three years since. There was also some evidence tending to show that the plan was made in 1843 by P. P. Hathaway, but there was no direct testimony when or where the plan was actually made. This plan thus offered was excluded by the presiding judge, and we think that in the exercise of his discretion he might properly do so. For the purpose of showing where the true line was, it certainly was not competent; it was not made part of, or referred to in, any deed under which either party claimed title. Nor do we think that the plaintiff had a right to insist upon showing the actual contents of the plan simply because in the cross-examination of some of his witnesses the defendant had asked certain questions concerning it. To these questions the plaintiff, so far as appears, had made no objection ; the court had not ruled that they were pertinent, nor that the evidence given in reply to them was relevant or admissible. It had only permitted the cross-examination to go on, no one objecting thereto. So far as we can ascertain from the bill of exceptions, the matter may have been one entirely immaterial. Undoubtedly, even if immaterial, the court might have permitted further evidence in relation to the plan, and the introduction of the plan itself, to show its contents, as the defendant had opened the subject. But while this is so, unless this evidence derived from cross-examination was material or was held to be so by the court, the plaintiff had no ground of complaint because the court declined to proceed further with it. The principle that when part of a conversation is permitted to be given in evidence the whole conversation on the same subject is admissible, does not apply to an immaterial con-

versation not objected to, a part of which has been given in evidence. Before a party can except to the exclusion of the remainder of a conversation partly detailed, he must show that what has been admitted had some bearing upon the case, or was admitted by the court as having such bearing, and that therefore he was entitled to detail fully all that then took place for the purpose of explaining, modifying or stating it more clearly.

Both plaintiff and defendant claimed under a division of the estate of Guilford Hathaway made by warrant from the judge of probate in 1763. This division was by strips, of which there were nine in all, and the first of these strips adjoined on the north the town line between Freetown and Middleborough, which was also the line between Bristol and Plymouth counties, and was bounded on the south by the second strip. The defendant's close was the second of these strips, the plaintiff's close was composed of part of the third and other strips, and the line in dispute was a part of the line between the second and third strips. The width of the strips was given in the division, and the distance to which the party having the first strip was entitled to hold was important, as showing where was the southern line of the second strip which was the disputed line. The plaintiff claimed that the record should not be introduced except so far as it related to the title of the parties to the parts of such estate held by them, but the court admitted it so far as it related to the first strip as well as to the second, and this admission was correct. For the purpose of ascertaining where the disputed line was, it was competent to ascertain where certain other lines were that were used in the same division, and from the position of which the disputed line could be determined. To have limited the admission of this record to the portions of the real estate held by the parties, would have been erroneous, as the locations of the second and third strips were necessarily controlled by that of the first.

The defendant was further permitted to put in evidence certain deeds showing the transmission through a number of persons of the first strip (which was bounded on the town line) to its present owner, in order thereby to meet evidence offered by

the plaintiff tending to show a change in the position of the town line since 1763. These deeds were objected to by the plaintiff as *res inter alios*. If they were more than thirty years old, they were admissible upon the ground that recitals in ancient deeds (under which neither party to the action claims) are competent evidence to prove the location of a disputed line. *Sparhawk* v. *Bullard*, 1 Met. 95. *Morris* v. *Callanan*, 105 Mass. 129. Nor can it make any difference whether the line so attempted to be proved is the one immediately in dispute between the parties, or one from the position of which the location of the immediately disputed line can be determined.

As to whether these deeds were ancient, the exceptions are silent; from the length of time since the division in 1763, they may well have been so, and we cannot assume them to have been otherwise in favor of the party offering the exceptions.

Similar considerations dispose of the exception to the admission of a deed of one Winslow to Dudley Hathaway, the plaintiff's ancestor; there is not enough stated in the exceptions to show that such admission was erroneous.

Nor could the plaintiff object that the court declined to receive the evidence of a surveyor, that, on survey of a portion of the town line other than that which bounded on the Hathaway estate, his survey did not then strike the monuments as now placed. It was not made admissible by the fact that it was a part of the same line as that which bounded on the Hathaway estate and between that and the next angle, nor by the fact that it was conceded that the town line was a straight line. Unless conceded or proved that both the monumental line as it now exists and the original town line were straight lines, the fact that the survey of the original line at one part of the same line did not agree with the monuments on that part, would have no tendency to show that a similar survey would not agree with the monuments at the part where the litigating parties were endeavoring to fix the original town line.

The last exception, which was to the refusal of the judge to admit the testimony of a surveyor who had run town lines in the vicinity of the *locus*, that town lines are uncertain in their loca-

tion, and that the position of town lines had been found by him to vary at different times as run by different surveyors, was prop- eily waived at the hearing. *Exceptions overruled.*

*G. Marston & C. W. Clifford,* for the plaintiff.

*J. M. Morton, Jr. & N. Hatheway,* for the defendant.