## TITLE TO CANAL LAND USED FOR STREET PURPOSES.

Common Pleas Court of Hamilton County.

FRANCES A. GATES v. JAMES P. ORR ET AL.

Decided, February 3, 1919.

*Land Registration—Abutting Owners Seek to Perfect Title—To Land Acquired for Canal Purposes but Always Used as a Street—Title of City Held Good—Notwithstanding Uncertainty of the Record Evidence—Statute of Limitations—Adverse Possession—Common Law Dedication—Estoppel.*

Where the records fail to disclose how much land was taken by the canal commissioners for the Miami & Erie canal, which was built in 1828, but it does appear that five years later the canal commissioners assented to the use by the city for street purposes of so much of the land conveyed to the state as was not in actual use for the canal, claims by abutting owners to title in the strip so used as a street down to the present time can not be maintained notwithstanding some uncertainty as to the property line as shown by old plats, deeds and maps, where the weight of the existing record evidence favors the contention of the city that the strip in question constitutes a public street, and there is undisputed evidence of its continuous use as a street, and that paving was early laid and has always been maintained by the city, and a sewer constructed and gas pipes laid, and during all the period of such use the abutting owners have refrained from encroaching upon this strip with their buildings or otherwise.

*Peck, Shaffer & Williams,* for plaintiff.

*Charles A. Groom,* City Solicitor, *Constant Southworth* and *Harry R. Weber,* Assistant City Solicitors, for city of Cincinnati.

GEOGHEGAN, J.

The proceeding herein is an application under the land registration act (103 Ohio Laws, 914, amended 104 Ohio Laws, 146), to register the title of two parcels of land described in the application as "Tract A" and "Tract B."

As to Tract A, there is no dispute.

Tract B is described in the application as follows:

"That portion of the strip of land known as North Canal street, thirteen (13) feet and one (1) inch in width measured north and south, and one hundred and four (104) feet in length, measured east and west, immediately adjacent to and next south of the aforesaid lot, and extending from the center of the said wall fence to the east line of Clay street, the same to be and remain an open-way for the use of this and adjacent premises."

This description is intended to cover a strip of land immediately in front of the property described in Tract A, which is at the northeast corner of Canal and Clay streets, having a frontage of one hundred and four (104) feet on what is described as the open-way, known as North Canal street.

The city of Cincinnati, which is made a defendant herein, contests the right of the plaintiff to have registered in her name the parcel described as Tract B, and it was upon the issue made by the answer of the city of Cincinnati to the effect that the said Tract B constitutes and forms a portion of a public street known as Canal street or North Canal street, and also a plea of the statute of limitations of twenty-one years, the open, notorious, continuous and adverse user of said tract as a part of a public street for upwards of fifty years, of common law dedication and estoppel, that this case was submitted to the court upon the evidence and the arguments of counsel.

The examiner appointed by the common pleas court under and by authority of the land registration act, reported favorably upon the application to register Tract B.

However, there had been no hearing before the examiner, and the city, having been made a party to the action, relies principally upon matters which do not appear upon the face of the record, although insisting that the record itself discloses that the tract in question is a part of the public street.

The difficulty in this cases arises, in so far as the court can discern after an inspection of the record, the hearing of the evidence and an examination of the great number of exhibits offered in the case, from the fact that the records do not disclose how much land was taken for the purposes of the Miami &

Erie canal by the commissioners appointed for that purpose in the early part of the last century.

The canal was built in 1828. At that time, Stephenson and wife, predecessors in title of the plaintiff, were the owners in fee simple of Lot No. 3 of McFarland's subdivision, part of the south thirteen feet of which are in question. In 1833, the canal commissioners assented to the use by the city for street purposes of such ground conveyed to the state as was not in actual use for the canal. Therefore, the first question that necessarily presents itself is—How much did the canal commissioners take for the purposes of the canal?

The evidence is plain that from the bend of the canal at Plum street, eastwardly to Clay street, the canal was one hundred and fifty feet wide, that is, there were seventy-five feet of land taken north and south of the center line of the canal, which the old plats indicate was approximately the center of Eleventh street. There is a deed offered in evidence from a certain Torrence to the state of Ohio, under date of April 11, 1826, which purports to establish a seventy-five feet line from the center of the canal for the property west of Main street. There is considerable doubt whether this deed conveyed any title or color of title, but, taken in connection with the fact that this same line described as seventy-five feet north of the center of Eleventh street has been recognized by disinterested persons from the date of the construction of the canal down to the present time, it may be said to be some evidence of the fact that the canal was one hundred and fifty feet wide west of Main street and east of that public street which was subsequently called Clay street.

Recitals in ancient deeds, documents and maps are competent evidence to prove the location of a disputed line, whether the line attempted to be proved is the one immediately in dispute between the parties or the one from the position of which the location of the immediately disputed line can be determined. *Whitman* v. *Shaw,* 166 Mass., 451; *Hathaway* v. *Evans,* 113 Mass., 264.

An examination of the deeds offered in evidence would indicate that various persons who owned real estate in this vicinity

conveyed their real estate by such descriptions as would indicate that the seventy-five feet line was the correct northern boundary of the property taken by the canal commissioners, that part of which not occupied by the canal proper being known as Canal street or North Canal street, and William Stephenson, himself, who was the ancestor of the plaintiff herein, accepted a deed from Nicholas Longworth which fixes the north line of North Canal street as this seventy-five feet line.

Counsel for the plaintiff insist that the description in the deeds referred to is erroneous, and it was omitted from the description in a subsequent deed from one Green, when he conveyed the Main street end of the lot to Stephenson in November, 1830.

While it is true that this so-called erroneous language was omitted, nevertheless, when Stephenson conveyed to Riddell he specified that his grantee "will never use or occupy the premises aforesaid for any other purpose or use than as a public street." It is evident from this that Stephenson must have himself recognized that there was some doubt as to where his line was, and it is further evident that at the time of the conveyance the property must have been in some use by the public as a street, for, otherwise, it would not have been necessary for Stephenson to have made this restriction in his conveyance.

It would only encumber this decision to make further comment upon the great number of deeds that have been offered in evidence. There are a great many of them which can be reconciled with the fact that the north line of Canal street was seventy-five feet north of the center line of the canal. Even deeds accepted by the immediate ancestors of the plaintiff contain descriptions which would indicate that line, notably the deed from Longworth, of the Clay street end, to Stephenson, in June, 1830, and the Main street end to Green in 1829, which described the property in such a way as to indicate the line of North Canal street to be where the city claims it is at this time.

While it is true that when Green conveyed to Stephenson, the alleged erroneous language was omitted from the description, and subsequent deeds from Stephenson to Riddell and Riddell to the City of Cincinnati did not conform to the original

description, nevertheless, it remains that the original deeds fixed a line which would seem more nearly in consonance with the line as claimed by the city to have been established by the canal, commissioners and which conforms to the line of the canal for a number of blocks west of the property in question.

Besides this, we have in evidence a plat taken from Grade Book No. 1 of the engineer's office, made in 1840, which shows the width of North Canal street to be forty-eight feet wide both east and west to Clay street. This forty-eight feet, plus twenty-seven feet, being half the width of the canal proper, would fix the north line of North Canal street at seventy-five feet north of the center of the canal. There is also an unsigned plat in the same grade book which purports to be a plat of Main street, which shows the width of North Canal street as forty-eight feet on the west side of Main street and thirty-eight feet on the east side. While this plat is not dated, its position in the grade book would indicate that it was made some time prior to 1840. These plats have been constantly in use in the city engineer's office and were made at a time when the ordinances of the city of Cincinnati required the city surveyor to make an actual survey at the time the grade was established. The platting commission plat shows the width of North Canal street, at Main street, to be forty-eight feet.

It would seem from this evidence, both of deeds and plats, that the width of North Canal street was forty-eight feet and that the distance from the center line of the canal to the north line of North Canal street was seventy-five feet. If this be true, then the registrant would not be entitled to register the strip of thirteen feet described in the application as Tract B.

It will not do to say that from 1831 to 1860 there is no evidence of the width of North Canal street. When the various deeds offered in evidence, as well as the plats and maps, are taken into consideration, it would seem that the canal commissioners appropriated one hundred and fifty feet for the canal, and the excess amount not needed by them in their work became the property of the city of Cincinnati for public streets. And while we are not unmindful of the deeds and maps upon which counsel for petitioner relies, if this case were to be determined en-

tirely upon the evidence afforded by deeds and maps, we would be compelled to say, in the light of all the surrounding circumstances, that the evidence as to forty-eight feet being the width of North Canal street controls, rather than that as evidenced by the deeds from Stephenson to Riddell and Riddell to the city of Cincinnati, and others to the same effect offered by plaintiff.

However, we do not have to depend entirely upon the evidence afforded by these deeds and maps. A number of witnesses who lived in the neighborhood and whose memory goes back for a great number of years, some of them long prior to 1860, testified that the way used as North Canal street was substantially the same width then as it is today and testified that the line of buildings from Main street to Walnut street were all in one straight line, and some of whom testified that the present Stephenson building is built farther south than the building which preceded it. Henry W. Stephenson, himself an heir of the William Stephenson who owned the property at the time the canal was built, testified that there never was any building on the thirteen foot strip in question. And all those witnesses testified that the property was in constant use by the public as a street for the purpose of passing from Main to Walnut streets, or in turning into an areaway which led to a wagon-yard of a hotel which fronted on Main street some distance north of the canal.

In 1877, the Gas Company laid a pipe on the strip in controversy. There is an entry in Stephenson's journal or family docket to that effect, which recites that "this pipe was laid on our property," but the journal does show, at least argumentatively, that this pipe was not laid under any building but was laid under the open-way, and Michael Connelly, who worked for the gas company at that time, testified that when the pipe was laid it was laid along what apparently was the street and not under or through any building.

There is no evidence at all in the case that there was ever any building upon this thirteen feet strip, with the single exception of a plat which was prepared by Thomas Punshon, which indicates the presence of frame buildings on the thirteen feet strip.

It is difficult to reconcile this finding of Punshon's with the evidence of the neighborhood witnesses, and especially with the

entries in the docket kept by Arthur Stephenson, which speak of building a certain frame shanty and then pushing it out on the thirteen feet strip. It seems that Stephenson was arrested by the police for attempting to build this shanty out beyond the house-line and was advised by his counsel to put it back of the house-line and then to push it forward after it was built. At least, this is the testimony of Henry W. Stephenson.

There may be a possible reconciliation in this—that when Punshon made his plat, the Model Laundry building, which occupies Tract A herein, was about to be constructed, and these buildings were either moved out while this construction was in progress, or were pushed out in the street in pursuance of a plan of Arthur Stephenson to throw some cloud upon the city's title to the strip in question.

During all this period of years, the plaintiff's predecessors in title paid taxes on that portion embraced in Tract A and not upon any portion embraced in Tract B, which is in dispute herein.

Immediately after Punshon was there the buildings were evidently removed because the evidence discloses that after the erection of the Stephenson building and the Model Laundry building, North Canal street remained in substantially the same condition as it is today.

It does not seem that until this suit was brought any steps were ever taken by William Stephenson or his successors in title to establish any title in themselves south of the seventy-five feet line. While counsel for the plaintiff insist that this way was kept open for the convenience of the abutting owners, there is no substantial evidence to justify that assertion. The only evidence of any assertion of title is that involved in the arrest of Arthur Stephenson for the obstruction of the street, and while it is true that he was dismissed in the police court, this cannot be said to be a finding of title in the abutters to that portion of the street. Certainly it can not be claimed that a criminal action, resulting in the dismissal of the defendant in the police court, would establish a title to land. The very fact that counsel for the plaintiff, in his argument, insists that there was a private way there,

impliedly recognizes the fact that the property was used at all times for street purposes and not occupied by any building.

It therefore seems to me that the acceptance by William Stephenson of the deed from Longworth, conveying the tract referred to by measurement to the seventy-five feet line, which measurement he could not overlook because it described also the width of his lot that was left, namely, about forty-two feet, the building of the Stephenson and Model Laundry buildings along the said line, the payment of taxes on all but the thirteen feet strip in controversy, the platting of the street as forty-eight feet wide, the advertisement for claimants made in 1844, the continuous use as a public street, the improvement of the street with cobblestones, the building of the sewer, and other evidence offered in the case to which it is not necessary to refer here, all show a clear intent to dedicate and an acceptance of that dedication. It would be more than passing strange to have a private way thirteen and a half feet wide along a public way some twenty-five feet wide. It would certainly seem that owners of property, who construct valuable improvements, would take in the construction of these improvements all the ground that was rightfully theirs. It would seem somewhat beyond the bounds of reason that an owner, whose property abutted upon a public street admittedly at least twenty-five feet wide, which by the terms of its grant could only be used for public street purposes, would immediately alongside thereto create a private way some thirteen and a half feet wide. It would be more in conformity with the common course of conduct that owners who construct valuable improvements upon streets would, if they desired to have a greater width of street in front of them, dedicate a portion of their property to make the additional width of the street. And that would seem to me to be the common sense view to take of the conflicting circumstances as shown by the evidence herein.

It is evident to me that William Stephenson, if he claimed any title at all originally, after the canal commissioners made their appropriation of the strip in question, intended to dedicate that strip to the city of Cincinnati, and in pursuance of that

intention carefully refrained from building the large Stephenson building upon any line south of the seventy-five feet line from the center of the canal. It will not do to say that he intended to maintain a way for access to his property in the rear because there was already amply sufficient access to that property over that portion of North Canal street about which there, is no dispute. And the fact that the city made plats which show a conformity with this idea, that they advertised for claimants, that they made certain improvements, and that the public generally used the property, not for the purpose of doing business with the owners of the abutting property, but for general public street purposes, indicates an acceptance of this dedication on the part of the public.

For upwards of eighty-five years, the owners of the abutting property have taken no steps to establish their claim. If they had any right to this property, it certainly would seem that they would have taken some steps ere this to have that right determined, but their whole course of conduct, even in so far as they were concerned, has been that of a doubt regarding their title. Even in the deed by which the plaintiff herein acquires title from the Stearns Realty Company, which grant occurred a short time before the bringing of this action, the property sought to be registered herein is described in two tracts, the tract herein described as "A" being conveyed by deed of general warranty, and the tract herein described as "B" being quit-claimed only, and the deed further recites:

"The Stearns Realty Company, for itself and for its heirs, executors and administrators, does hereby covenant as to the premises first described (but not as to the premises second above described), with the said Frances A. Gates, her heirs and assigns, that it is the true and lawful owner," etc.

I have given this case careful consideration, I have made a thorough examination of all the authorities submitted, and have gone carefully through the numerous exhibits that have been offered herein. I realize the importance of this matter, both from the standpoint of the public and that of the owner of the

property. I have been especially careful because of the report of the examiner recommending the registration as prayed for in the petition, and I must concede that I have a great respect for his opinion. But, the matter has been presented to me in a different light than it was to him. I have had all the evidence before me, where he has had only such evidence as the records afford. I must admit that there are some complications and discrepancies in the evidence which seem to cast the shadow of doubt upon the whole matter, but, on the whole, I believe that the conclusion I have come to is the correct one.

I have made an examination of the act under which this proceeding is brought, and am not sure that I can enter a decree adjudging the title to the strip in question to be in the city of Cincinnati; so, I will content myself at this time by simply deciding that the application to register that portion known as Tract B be refused. Counsel may then take up with me the question of the nature of the decree that should be entered in this case.