J. FLEET COWDEN, trustee, *vs.* ROGER CUTTING & others.

Middlesex.  December 5, 1958. — May 6, 1959.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Adverse Possession and Prescription. Real Property*, Partition, Possession. *Deed*, Construction. *Equity Pleading and Practice*, Findings by judge. *Land Court*, Findings by judge.

In a suit in equity in the Land Court to remove a cloud on title, this court's dealing with factual matters on appeal was on the same basis as in suits in equity in other courts. [165]

Title by adverse possession to a parcel of unenclosed and uncultivated woodland was not shown by "few, intermittent, and equivocal" acts of possession thereof by the owners of adjacent land such as use of some of the locus in connection with a mill on the adjacent land, maintenance of a road on the locus for access to the adjacent land, cutting of firewood and lumber on the locus, removal of fallen trees therefrom, and erection of "no trespassing" signs thereon. [166–168]

A proceeding for partition of a decedent's real estate did not affect the title to one of three lots of his where the deed of a commissioner directed to make the partition by sale conveyed only the other two lots, not-

withstanding that the prayer of the petition and the decree for partition were for sale of "all" the real estate of the decedent, that in the commissioner's notice of sale a description of the two lots conveyed was preceded by a statement that he would sell "all" the decedent's real estate, that the commissioner's affidavit stated that he had sold the "lands" described in the notice, and that the court by decree accepted the commissioner's report and account and "confirmed and established" the partition. [169–170]

Possession of a parcel of unenclosed, uncultivated woodland by a grantee thereof sufficient for his maintaining a suit in equity to remove a cloud on his title was shown where, after recording his deed, he paid the taxes on the parcel, put up "no trespassing" signs, removed a sign bearing the name of an adjacent owner, and asserted his ownership by statements to and an action for trespass against the adjacent owner, although in his bill in equity he alleged that the parcel was "undeveloped woodland and . . . [had] not at any time been occupied or used by any person or persons." [171]

BILL IN EQUITY, filed in the Land Court on February 2, 1954.

The suit was heard by *McPartlin*, J.

*Edward T. Simoneau*, for the defendant Matilda M. O'Rourke, submitted a brief.

*J. Fleet Cowden*, (*Orrin P. Rosenberg* with him,) for the plaintiff.

WHITTEMORE, J. The defendant Matilda M. O'Rourke has appealed from the final decree of the Land Court in a suit to remove a cloud on title under the provisions of G. L. c. 185, § 1 (k), and c. 240, §§ 6–10. The judge made full and extensive voluntary findings and the evidence is reported. We are to decide the case according to our judgment of the facts, accepting the findings below unless we determine that they are plainly wrong. *Lowell Bar Assn.* v. *Loeb*, 315 Mass. 176, 178. *Carroll* v. *Markey*, 321 Mass. 87–88. *Skil Corp.* v. *Barnet*, 337 Mass. 485, 488 ("giving due weight to the judge's findings"). This being a suit in equity such as may be brought in the Supreme Judicial Court or the Superior Court as well as the Land Court, the rule stated for a decision in statutory Land Court proceedings (*Mahoney* v. *Wilson*, 260 Mass. 412, 414) that the Land Court "decision will not be disturbed unless unsupported by evidence" does not apply.

The locus is a strip of unenclosed woodland in Sudbury lying in the northwest corner of Old Lancaster Road and Peakham Road.

The plaintiff's title is shown in three deeds delivered and recorded in 1953. The alleged cloud arose in a deed from Albert P. Willis to Lucius P. Bent dated March 26, 1904, which conveyed two parcels other than the locus and whatever was encompassed in the following generality: "and meaning hereby to convey all my rights, title and interest to any and all real estate situated in said Sudbury, acquired by me as one of the three heirs of the late Charles P. Willis."

The six defendants originally named were described as the sole parties known to the plaintiff whose interests derive from Lucius P. Bent and there was notice by publication to all others claiming under him. A guardian ad litem and the six defendants assented to a final decree for the plaintiff and such was entered. Thereafter a petition by O'Rourke to vacate the decree was allowed; O'Rourke was made a defendant; and the issues raised by her answer were tried. O'Rourke (hereinafter the defendant) contends that the plaintiff has no title because long before the deeds to the plaintiff the title held by the then owners of the locus was conveyed away in partition proceedings, and because of allegations in the bill of complaint, that the plaintiff does not have possession, and that the defendant has title by adverse possession.

1. The defendant's lack of interest in the title, and in the proceedings to quiet it, is established by the conclusion of the judge, if it is right, that "[t]he acts done by the defendant and her predecessors in title . . . were insufficient to establish title by disseisin." We are unable to rule that this conclusion, so far as it is of fact, is wrong. In its aspect as a ruling it is correct. The judge heard and saw the witnesses and was in a position to judge the weight and credibility to be given to the testimony of each. The defendant is the owner of land adjacent to the locus on the west inclusive of a pond, the easterly shore of which is at or near the common boundary. It was conveyed by the guardian of the

minor children of Charles P. Willis to Johnston Lumber Company on December 18, 1897. Willis's widow had previously conveyed her rights. By mesne conveyances, title to this adjacent land came to the defendant's father in 1924. He conveyed it to the defendant on June 7, 1943. The defendant later conveyed to one Bacon and thereafter, by mesne conveyances and foreclosure of a mortgage, title came back to the estate of the defendant's father and was inherited by the defendant. In each of these deeds, including that to the defendant, the description of the property begins "on the North side of said road at the pond at land of heirs of Charles P. Willis, now or formerly" or with similar words.

The judge found that the "locus was never fenced in so as to give the appearance of being conveyed with the adjoining land," and it was never cultivated. There are detailed findings in respect of the subsequent use of the land. The Johnston Lumber Company erected bunkhouses on the locus which stood for several years while its mill was operating. The mill burned about fifty years ago. The company used a small part of the land for storing barrels. The company put in a road alongside the pond and used it for hauling barrels and logs. The next two owners of the defendant's adjacent land had some firewood cut off the locus in each year of their ownership (1903 to 1923). The next owner of the adjacent land had several thousand feet of lumber cut from the locus and sold. The defendant's father erected a cottage on the adjacent land at the edge of the pond. He brought in building materials and furnishings across a road on the locus. At some time or other he put gravel on this way and removed some tree roots on or near the way. He put up "no trespassing" signs. He cleared off some of the underbrush and cut some firewood but not for sale. The father for years lived in the cottage in the summer and visited it week ends during the rest of the year. He put up a mail box at the corner of Lancaster and Peakham roads. Following the hurricanes he caused broken tree tops to be removed and about 30,000 feet of fallen trees taken out as a precaution. Bacon rebuilt the road from Peakham Road

northerly beside the pond to the cottage. He attempted
to sell a portion of the locus and the buyer started to build,
but stopped after a foundation or cellar was built as both
Bacon and the buyer learned that they did not have record
title. The defendant in 1951 or 1952 knew she did not have
record title. The defendant erected "no trespassing" signs.
In the early part of 1954, she had a survey made. The locus
had been used by the public as a means of access to the pond
shore for picnic grounds and to the pond and surrounding
area for fishing and hunting. This was prior to the owner-
ship of the defendant's father. The evidence showed that
the road across the locus was regularly used for access.
There was testimony of some other use such as that a fence
was at one time erected along a side of the locus and that
the defendant rode and walked through the locus. There
was testimony that "[i]t was generally known in the com-
munity" that the locus was the property of the defendant's
father. The evidence indicates that taxes were not paid on
the locus for many years.

The judge concluded, "I find on all the evidence that the
locus was open and unenclosed woodland . . . that the
acts of possession were few, intermittent, and equivocal."
Many of the acts done were consistent with the assertion
only of an easement of passage.

It is well established that acts such as those found by the
judge or shown by the evidence do not require a conclusion
of disseisin of wild or wood land not fenced or reduced to
possession by cultivation. *Bates* v. *Norcross,* 14 Pick. 224,
228. *Coburn* v. *Hollis,* 3 Met. 125, 128–129. *Slater* v.
*Jepherson,* 6 Cush. 129, 131–132. *Cook* v. *Babcock,* 11 Cush.
206, 210. *Parker* v. *Parker,* 1 Allen, 245, 247. *Morrison* v.
*Chapin,* 97 Mass. 72, 76. *Morris* v. *Callanan,* 105 Mass.
129, 133. *McDonough* v. *Everett,* 237 Mass. 378, 383–384.
*Dow* v. *Dow,* 243 Mass. 587, 593 ("It is generally held that
a title by adverse possession cannot be shown to wild or
woodland that has always been open and unenclosed").
*Bates* v. *Cohasset,* 280 Mass. 142, 153. Compare *Keith* v.
*Kennard,* 222 Mass. 398, and *Phipps* v. *Crowell,* 224 Mass.

342, where fences were built across the necks of promontories, serving to enclose them; *LaChance* v. *First Natl. Bank & Trust Co.* 301 Mass. 488.

We do not find it necessary to consider whether the defendant is able to "tack" the predecessor titles (see *Wishart* v. *McKnight,* 178 Mass. 356, and 184 Mass. 283) or the effect of the evidence of insanity of Adeline M. Willis, one of the three owners in common by inheritance from Charles P. Willis, throughout the period of claimed adverse possession. See *Edson* v. *Munsell,* 10 Allen, 557.

2. The parties have fully argued other issues and we decide them. The first of these is the effect of the partition proceedings. We rule that those proceedings did not transfer the locus out of the plaintiff's chain of title.

A petition for partition was filed February 26, 1904, by two daughters of Charles P. Willis, deceased. It prayed that partition "may be made of all the real estate" of Charles P. Willis lying in the Commonwealth, and that the commissioner "be ordered to make sale and conveyance of said real estate at public auction for cash." The decree so directed. The commissioner filed an affidavit that he had given notice and had "made sale and conveyance of the lands therein described" to Lucius P. Bent. The notice read that the commissioner would make "sale of all the real estate of Charles P. Willis deceased." There followed in the notice a description of two tracts which did not include the locus, one of them lying in the north*east* corner of the two roads and the other lying *south* of Peakham Road. The commissioner's deed dated April 25, 1904, did not include the locus. There is no evidence of the reason for the omission. The Probate Court entered a decree on the commissioner's report and account "that the same be accepted and the partition confirmed and established." One third of the proceeds of the partition proceedings were paid to Lucius P. Bent who already, by the deed of Albert P. Willis on March 26, 1904, had title to a one-third interest in land described in the commissioner's deed.

The operative instrument in a partition by sale was, in

1904, as it is now, the deed of the commissioner. R. L. c. 184, § 47 ("The conveyance shall be conclusive . . ."). G. L. c. 241, § 18. *Buron* v. *Brown*, 336 Mass. 734, 735. Neither the direction to the commissioner nor his report of his doings pursuant to the decree enlarged the actual conveyance. So far as he did not conform, the matter could have been recommitted for further action or a new commissioner appointed. *Brown* v. *Bulkley*, 11 Cush. 168. Or the incomplete partition being later discovered, new partition proceedings could be had. *Barnes* v. *Boardman*, 157 Mass. 479, 480–481.

The final determination which the partition proceedings made was of the individual rights and interest of the common owners in the property (*Brown* v. *Bulkley*, 11 Cush. 168, 169). That is irrelevant to the question of what the deed of the commissioner actually conveyed. It is only in partition by division (act of commissioner and subsequent decree of the court confirming it) that the court's decree operates to transfer the property. R. L. c. 184, §§ 34, 39, 40, 45. G. L. c. 241, §§ 16, 18. See *Carpenter* v. *Green*, 11 Allen, 26; *Buron* v. *Brown*, 336 Mass. 734, 735.

The jurisdiction of the Probate Court, contrary to the defendant's contention, did not depend upon the effectiveness of the deed to convey all the real estate. There is no such implication in the statute.[1] See *Barnes* v. *Boardman*, 157 Mass. 479, 480. In any event such an implication as the defendant urges could not broaden the effect of the commissioner's deed.

It is irrelevant that by R. L. c. 148, § 19, no sale of real property under a license of the court "shall be avoided . . . on account of any irregularity" if certain provisions are met. The sale, and the title which it conveyed, are not avoided

---

[1] Revised Laws c. 184, § 34, provided that the Probate Court "may . . . make partition of *all* the land of such deceased person, lying within the commonwealth . . ." (emphasis added). In § 39, it was provided also that "[i]f partition is made upon the application of an heir or a person holding under him it shall be of all the land which descended from the ancestor which any party interested requires to have included; and if made upon the application of a devisee or person holding under him, it shall be of all the land held by the applicant jointly or in common with others holding under the testator which he or any other devisee so requires."

by a decree which recognizes that certain land was not included in the sale or deed.

3. The defendant also argued the issue of the plaintiff's possession. The judge noted the rule that a bill to remove a cloud on title may not be maintained "unless both actual possession and the legal title are united in the plaintiff" (*First Baptist Church of Sharon* v. *Harper,* 191 Mass. 196, 209; *Vitelli* v. *Ryder,* 329 Mass. 119, 123; *MacNeil Bros. Co.* v. *State Realty Co. of Boston, Inc.* 333 Mass. 770) and found the necessary possession in the plaintiff. The evidence permitted this finding. The plaintiff recorded his three title deeds on December 18, 1953. Within a day or two thereafter he put up several "no trespassing" signs and removed a sign which bore the defendant's name. After 1953 he paid taxes on the locus. See *Blanchard* v. *Lowell,* 177 Mass. 501. In March, 1954, he informed the defendant and her attorney of his ownership and said his title was clear and asked the defendant what her surveyor was doing on the land. In March, 1954, he brought in the Land Court an action of trespass against the defendant. The defendant in disputing the plaintiff's possession relies only on the allegation of the bill that the parcel "is undeveloped woodland and has not at any time been occupied or used by any person or persons." There is nothing in this contention. This allegation is not inconsistent with the acts of the plaintiff which show his possession. His acts were sufficient to show possession in the owner of wild land which has not been occupied by another. *Proprietors of Kennebeck Purchase* v. *Call,* 1 Mass. 483. *Proprietors of Kennebeck Purchase* v. *Springer,* 4 Mass. 416, 418. *Percival* v. *Chase,* 182 Mass. 371, 374. *Stone* v. *New England Box Co.* 216 Mass. 8, 11–12. Restatement: Torts, § 157; Property, § 7, comment c. Tiffany, Real Property (3d ed.) § 94 (possession is necessarily exclusive).

4. The defendant's brief does not specify error in the ruling of the judge that the deed of Albert P. Willis to Lucius P. Bent dated March 26, 1904, did not convey any interest in the locus or in the provision of the decree which adjudi-

cates that the plaintiff has title to the one-third interest which that deed would have conveyed to Bent if the generality therein ("all my rights, title and interest to any and all real estate situated in said Sudbury") had operated to enlarge the grant. There is no contention that the bill must fail because the grant in the deed means that the plaintiff has less than full legal title. See *Daley* v. *Daley*, 300 Mass. 17, 21. The known heirs of Lucius P. Bent and the guardian ad litem assented to the entry of a decree for the plaintiff and have not appealed. See G. L. c. 240, § 10. The defendant's possible interest has, as noted, been disposed of by the correct rulings for the plaintiff on the issue of adverse possession. Our cases appear to support the conclusion, necessarily implicit in the decree below, that the controlling intention of the generality in the deed of March 26, 1904, was to state what the parties understood the two expressly described parcels to be rather than to enlarge the grant,[1] but in the circumstances noted we find no occasion to review the decree in that aspect.

5. We have considered all points argued including those not discussed. The contention of the defendant is frivolous that by language in the bill the plaintiff has recognized that he does not have title and that it is in the heirs of Lucius P. Bent.

6. The final decree ruled only in respect of the one-third interest which the plaintiff acquired from the estate of Albert P. Willis presumably because that was the only interest affected by the alleged cloud. The legal title to the other two undivided one-third interests is unquestionably in the plaintiff because of his title deeds. The plaintiff not

---

[1] *Tyler* v. *Hammond*, 11 Pick. 193, 212. *Whiting* v. *Dewey*, 15 Pick. 428, 434. *Dana* v. *Middlesex Bank*, 10 Met. 250, 255. *Presbrey* v. *Presbrey*, 13 Allen, 281, 283. *Lovejoy* v. *Lovett*, 124 Mass. 270, 274. *Dow* v. *Whitney*, 147 Mass. 1, 6. *Cassidy* v. *Charlestown Five Cents Sav. Bank*, 149 Mass. 325, 327. *Crabtree* v. *Miller*, 194 Mass. 123, 126. *Hamlin* v. *Attorney Gen.* 195 Mass. 309, 312–313. *Morse* v. *Chase*, 305 Mass. 504, 508. See *Melvin* v. *Proprietors of Locks & Canals*, 5 Met. 15, 27–28, 30; *Worthington* v. *Hylyer*, 4 Mass. 196; *Thatcher* v. *Howland*, 2 Met. 41; *Wheeler* v. *Randall*, 6 Met. 529; *Jewett* v. *Steer*, 6 Cush. 99; *Hastings* v. *Hastings*, 110 Mass. 280; *Auburn Congregational Church* v. *Walker*, 124 Mass. 69. Compare *Foss* v. *Crisp*, 20 Pick. 121; *Sawyer* v. *Kendall*, 10 Cush. 241; *Parks* v. *Loomis*, 6 Gray, 467; *Coogan* v. *Burling Mills*, 124 Mass. 390, 393; *Moran* v. *Somes*, 154 Mass. 200.

having appealed, we see no occasion to broaden the words of the final decree, which, with this decision, shows the true state of the title.

*Decree affirmed.*