ARTHUR M. DOW *vs.* HERBERT A. DOW.

Essex.   November 13, 1922. — January 22, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Adverse Possession.   Evidence,* Competency, Declaration of deceased person.

Entry upon and actual possession of one of three separate and non-contiguous parcels of land under color of title evidenced by a sheriff's deed conveying the three parcels does not thereby give constructive possession of the other two non-contiguous parcels sufficient to form the basis for a claim of title by adverse possession.

By a sheriff's deed dated June 10, 1889, there were conveyed to one of two brothers three separate and non-contiguous parcels of land owned by the other brother and consisting respectively of woodland, sprout land and marsh land.   In 1918 a writ of entry to recover possession of the three parcels was brought in the Land Court against the grantee in the sheriff's deed by the son and heir of the other brother, who had died in 1916.   The grantee claimed title under the deed and also by adverse possession.   At a trial in the Superior Court of an issue, framed by the Land Court, "Has the tenant acquired title by adverse possession to any portion of the demanded premises, and if so, to what portion?" the sheriff's deed was admitted in evidence, subject to an exception by the demandant.   *Held,* that the deed was admissible to prove the nature of the tenant's claim and to show color of title and therefore constructive possession of the lot upon which an entry had been made and of which actual possession had been taken.

At the above described trial there was evidence that the demandant's father received notice of the tenant's claim under the sheriff's deed in 1889, that thereafter the tenant cut wood for firewood, poles, posts, bridge stringers and dead trees from the woodlot, hauled sand and stone therefrom, trimmed the trees, put out fires on the lot and from year to year trimmed the young growth of dead wood.   The only evidence of acts done by the tenant on the sprout land was that he ran a boundary line on the east side and had cut some wood upon it eighteen or twenty years before.   There was evidence that the tenant had cut the grass on the marsh land since 1889, except during three years, and had dug two ditches to drain the salt ponds.   It appeared that the

woodlot was substantially enclosed but the sprout land and marsh land were not enclosed. There also was evidence warranting a finding that acts that the demandant's father did on the woodlot were not done adversely but by permission of the tenant and that the tenant's acts on the lot were open, notorious, uninterrupted and adverse for about twenty-seven years, and known to the brother during his lifetime and to other persons living in the vicinity. The judge denied a motion by the demandant that a verdict be ordered in his favor, and in substance instructed the jury that the entry and acts done by the tenant on the woodland gave a color of title to all three lots and were evidence of title by adverse possession as to each. The jury returned a verdict for the tenant as to each parcel. *Held,* that

(1) The instructions were erroneous as to the sprout land and marsh land;

(2) The instructions given were correct so far as applied to the woodland;

(3) If the jury found that the acts referred to were done on the woodland they were warranted in finding that the tenant had acquired title thereto by adverse possession;

(4) It could not have been ruled that there was no evidence of title by adverse possession as to the woodland and, as to it, the question of disseisin rightly was left to the jury under proper instructions;

(5) An instruction in substance that the jury should take into consideration all of the facts and if they found them to be as the tenant testified they would be entitled to find in his favor was correct as to the woodland but was error as to the other parcels.

Facts stated by one person to a second cannot be put in evidence under G. L. c. 233, § 65, or otherwise after both have died by testimony of a third person as to a declaration made to him by the second person.

WRIT OF ENTRY in the Land Court dated June 24, 1918, to recover three parcels of land in Salisbury, alleged by the demandant to be owned by him in fee.

The tenant filed an answer denying the alleged ownership and right of entry in the demandant and alleged title in himself by adverse possession and also by a sheriff's deed dated June 10, 1889, conveying the parcel of land to him.

The judge of the Land Court framed an issue for trial by a jury in the Superior Court as follows: "Has the tenant acquired title by adverse possession to any portion of the demanded premises, and if so, to what portion?"

The issue was tried in the Superior Court before *Raymond,* J. Material evidence and exceptions thereto are described in the opinion. At the close of the evidence the demandant moved that a verdict be ordered in his favor. The judge denied the motion and also refused to rule as requested by the demandant that

"4. Where land is such as has been testified to here on the

part of the tenant, woodland, without buildings, uncultivated, open and unenclosed except for fences not erected and maintained by the tenant, the cutting of wood for use and sale from time to time and doing of the things testified to on behalf of the tenant are not such acts as would give title.

"5. That there can be no adverse use of such wild land or woodland as is here described by the witnesses through the cutting of wood and timber or doing any other acts which it has been testified have been done by Herbert A. Dow in respect to the premises.

"6. That even if such acts on the parcels of woodland here sued for could be acts of adverse possession, that similar acts on the part of S. Melvin Dow would prevent the accruing of title by possession.

"7. That the doing of such acts by both Herbert A. Dow and S. Melvin Dow, or their authority, would not give title by possession.

"8. That in regard to wild lands and woodlands the cutting of wood from time to time and selling the same is not to establish a title; that there must be a distinct and well defined possession and occupation thereof, as by enclosing the land with a fence, or by similar acts done under such circumstances that they indicate that the possession taken is open, exclusive, and of such character that it is clearly inconsistent with and adverse to title in any other person."

After the charge to the jury, in a colloquy between the judge and the counsel as to the demandant's requests for rulings, the following remarks were made, not to, but in the presence of, the jury. The judge: "I will say to them that the cutting of wood for use and sale from time to time, and doing all the things testified to — no. I cannot go quite that far. If they find all of the facts as the tenant has testified, then I should say that they would be allowed to find for the tenant; that the cutting of wood alone would not be sufficient, or the carting of stone alone or the teaming of sand alone. They should take into consideration all of the things and say whether or not that does constitute such a claim as manifested itself during twenty years to constitute adverse possession. Unless you cover those in your question, I will deny this in this form."

The demandant's counsel: "I should like to save an exception to it and to what your Honor gave in place of it just now."

The judge: "That is, my saying that they must take into consideration all of the things and on the whole facts they would have a right to find for the tenant?"

The demandant's counsel: "Yes."

The jury found for the tenant as to all three pieces of land; and the demandant alleged exceptions.

The case was submitted on briefs.

*T. S. Herlihy*, for the demandant.

*E. Foss*, for the tenant.

CROSBY, J. The demandant brought a writ of entry in the Land Court in 1918 to recover possession of three parcels of land. The tenant claims title by virtue of a sheriff's deed given to him in 1889 and also by adverse possession. The following issue was framed in the Land Court and tried in the Superior Court: "Has the tenant acquired title by adverse possession to any portion of the demanded premises, and if so, to what portion?" The jury found for the tenant as to each of the parcels. At the close of the evidence the demandant moved that a verdict be directed in his favor as to each of the lots in question; the motion was denied and the demandant excepted. He also excepted to the admission and exclusion of certain evidence, and to the refusal of the court to make certain rulings and give certain instructions.

There was offered in evidence, subject to the demandant's exception, a sheriff's deed to the tenant of the lots in question; the deed was admitted to show color of title and the extent of the property claimed by adverse possession. It was competent for that purpose. The tenant was entitled to show that he had entered into possession of the land described in the deed under a claim of right.

It is settled that where a person enters upon a parcel of land under a color of title and actually occupies a part of the premises described in the deed, his possession is not considered as limited to that part so actually occupied but gives him constructive possession of the entire parcel. The entry is deemed to be co-extensive with the grant upon the ground that it is the intention of the grantee to assert such possession. *Boston* v. *Richardson,* 105 Mass. 351, 371, 372. *Murphy* v. *Commonwealth,* 187 Mass.

361.  *Smith* v. *Gale*, 144 U. S. 509, 525, 526.  See also cases cited in 2 C. J. 235, notes.

The principle as above stated, however, applies only when there has been an entry of disseisin upon a single parcel of land, and is not applicable to include the three separate and not contiguous parcels described in the sheriff's deed, on only one of which an entry has been made.  The entry upon and actual possession of one parcel will not thereby give constructive possession of the others where, as in the case at bar, the parcels are not contiguous but separate and distinct from each other.  *Farrar* v. *Eastman*, 10 Maine, 191.  *Hornblower* v. *Banton*, 103 Maine, 375.  *Brown* v. *Bocquin*, 57 Ark. 97.  *Georgia Pine Investment & Manuf. Co.* v. *Holton*, 94 Ga. 551.  *Stephenson* v. *Doe*, 8 Blackf. 508.  *Burt & Brabb Lumber Co.* v. *Sackett*, 147 Ky. 232.  *Morris* v. *McClary*, 43 Minn. 346.  *Wilson* v. *McEwan*, 7 Ore. 87, 107.

It follows that the deed was admissible to prove the nature of the tenant's claim, and to show color of title, and therefore constructive possession of the lot, upon which an entry had been made and actual possession taken.

It is the contention of the demandant that the evidence is insufficient to warrant a finding that the tenant is the owner of any of these parcels in controversy.  The lots were as follows: One of woodland containing about seven acres; one of sprout land of about five acres.  These lots were conveyed to S. Melvin Dow by Moses T. Dow by deed dated January 27, 1875.  The third lot was marsh land, devised to Melvin * under his grandmother's will, containing about four acres.

S. Melvin Dow died March 28, 1916, intestate, leaving the demandant, his son, as his only heir at law and next of kin, and who is entitled to possession of the lots demanded unless the tenant has become the owner thereof by adverse possession.  The tenant is the uncle of the demandant.  There was evidence that the tenant purchased the various parcels at a sheriff's sale on an execution against Melvin and received a deed therefor dated June 10, 1889; that thereafter he saw Melvin and told him that he had bought the property; that three or four years afterwards Melvin came to live with the tenant and remained with him for

---

* S. Melvin Dow was sometimes called Melvin Dow.

six or seven years; that he then went to live with his brother Moses in the next house to that of the tenant and remained there until he died; that the tenant and Melvin discussed the sale several times; that the latter told the tenant that he was glad he (the tenant) had bought the property and wanted Herbert to promise to keep it for him until he should take it back; that Herbert told him he was willing he should do so at any time; that the tenant paid the taxes for seven or eight years; that later Melvin told Herbert that the latter was not getting much income from the property, and that he (Melvin) would pay the taxes; that he did so from that time until his death; that he never reimbursed the tenant for what he had paid and no deed was ever given. There was also evidence that there was a growth of young pine, maple and birch trees on the woodlot; that after the tenant received the sheriff's deed he cut wood, poles and dead trees from the lot, and hauled sand and stone therefrom, and trimmed the trees; that he used the hard wood for firewood, cut posts and bridge stringers; that he put out fires on the lot and got help for that purpose; that from year to year since 1889 he trimmed the young growth of dead wood. There was further evidence that the woodlot was partly enclosed by fences of boards and of wire and by stone walls; that fences were all around the lot except in places, but none of them were erected by the tenant.

It could have been found that Melvin was informed in 1889 of the tenant's claim of title, and that such acts as he, Melvin, did on the woodlot were not done adversely but by the tenant's permission; that the tenant's acts on that lot were open, notorious, uninterrupted, and adverse, for about twenty-seven years, and could be found to have been known by Melvin during his lifetime, and by other persons living in that vicinity.

The judge in substance instructed the jury that the entry and acts done by the tenant on the woodland gave a color of title to all three of the lots and was evidence of a title by adverse possession as to each; these instructions, for the reasons previously stated, were erroneous.

The instructions given, however, were correct so far as applied to the woodland, and if the jury found that the acts referred to were done on that land, they were warranted in finding that the tenant had acquired title thereto by adverse possession.

The acts done by the disseisor on land by reason of which he claims a title of this character are seldom if ever of the same description; and the decision of each case depends upon its particular facts. *Stevens* v. *Taft,* 11 Gray, 33. It is generally held that a title by adverse possession cannot be shown to wild or woodland that has always been open and unenclosed. *Bates* v. *Norcross,* 14 Pick. 224. *Slater* v. *Jepherson,* 6 Cush. 129. *Parker* v. *Parker,* 1 Allen, 245. *Morris* v. *Callanan,* 105 Mass. 129. *Richmond Iron Works* v. *Wadhams,* 142 Mass. 569. It is also held that to maintain title by adverse possession, the owner must have had notice, express or implied, of the acts of the disseisor, and thereafter have failed to assert his title within twenty years. To acquire such a title the tenant must show not only a substantial enclosure, but also an actual occupancy, and that the acts done on the land were sufficiently notorious to warrant the jury in presuming that the owner had notice thereof. *Coburn* v. *Hollis,* 3 Met. 125. *Ewer* v. *Lovell,* 9 Gray, 276.

There was evidence in the case at bar that the woodlot was bounded on one side by a highway. The tenant testified that there were "fences all around except the partial places." From this and the other evidence it could be found that the lot was enclosed to the extent that the boundaries thereof were shown with substantial certainty. This evidence and the evidence that the tenant paid taxes with the knowledge of Melvin Dow, and that the latter never made any claim to the woodlot although it could be found that he knew of the acts of ownership on the land committed by the tenant and never objected thereto, distinguish the case from that of *Slater* v. *Jepherson, supra,* where it appeared that the land demanded was unenclosed woodland, there was no evidence as to the enclosure of the land by fences, and it was a part of a large tract owned by the demandant.

We are of opinion that upon the whole evidence, including evidence of acts done on the woodland by the tenant for more than twenty years which could have been done with the knowledge and acquiescence of Melvin Dow, the payment of taxes by the tenant, and that the lot was substantially enclosed, it could not have been ruled that there was no evidence of title by adverse possession as to that lot, and that the question of disseisin was rightfully left to the jury under proper instructions. *Pray* v.

*Pierce*, 7 Mass. 381. *Small* v. *Procter*, 15 Mass. 495. *Coburn* v. *Hollis, supra. Morrison* v. *Chapin*, 97 Mass. 72. *Blanchard* v. *Lowell*, 177 Mass. 501. *Curtis* v. *Brown*, 219 Mass. 157, 159. The only evidence of acts done by the tenant as affecting the sprout land is that the tenant ran a boundary line on the east side, and had cut some wood upon it eighteen or twenty years ago; it is not enclosed; there is a fence across the north end.

The evidence relating to the marsh land is that it is in the salt marshes and is not enclosed; that a creek nearly surrounds it. The tenant testified that he had cut the grass since 1889 except during three years, and had dug two ditches to drain the salt ponds.

The evidence as to the sprout land and the marsh land falls far short of warranting a finding of exclusive possession and occupancy; it therefore does not constitute proof of disseisin, and the judge should have so instructed the jury. *Slater* v. *Jepherson, supra. Commonwealth* v. *Roxbury*, 9 Gray, 451. *Parker* v. *Parker, supra. Richmond Iron Works* v. *Wadhams, supra. McDonough* v. *Everett*, 237 Mass. 378. The demandant's fourth and fifth requests were rightly refused so far as they related to the woodlot, but should in substance have been given as applied to the sprout lot and marsh land. The sixth and seventh could not properly have been given; the charge correctly covered the question to which they related. The seventh was included in instructions given so far as it states correct principles of law. It follows that the exception to the refusal of the court to give the fourth and fifth requests must be sustained. The exception to the instruction given at the end of the charge, which was in substance that the jury should take into consideration all of the facts, and if they found them to be as the tenant testified they would be entitled to find in his favor, was correct as to the woodland, but it was error as to the other parcels; accordingly the exception must be sustained. The evidence by which the demandant offered to show by a witness that Melvin Dow's sister (who had deceased before this action was brought) told the witness he had paid the demandant all he owed him for the woodland, was rightly excluded. The declaration was not of a fact within the personal knowledge of the declarant, but was merely hearsay. It was a declaration of a deceased person to another deceased person and inadmissible under G. L. c. 233, § 65, or otherwise. To render the statement of Melvin

Dow admissible, it would be necessary under that statute to show that it was made to a person who was called as a witness and who heard it, and that the trial judge found that it was made in good faith before the commencement of the action and upon the personal knowledge of the declarant.

It follows that all the exceptions so far as they relate to the wood-lot are overruled. The exceptions to the refusal of the trial judge to direct a verdict for the demandant as to the other lots, and to give the demandant's fourth and fifth requests as to those lots, and that part of the charge excepted to which permitted a finding for the tenant as to the sprout lot and marsh land, must be sustained.

*So ordered.*