S. Bailey Norton, Jr., & others,[1] trustees, *vs.*
Robert E. West & another[2]
(and a companion case[3]).

Suffolk.    June 13, 1979. — September 13, 1979.

Present: Goodman, Greaney, & Kass, JJ.

*Adverse Possession and Prescription. Land Court, Appeal.*

In an action to establish title to land by adverse possession, a judge did
    not err in finding that the plaintiff's color of title began at the time
    they recorded their invalid deed, that their predecessor in title
    never entered upon the premises to exercise his claim of ownership,
    and that the plaintiffs' own activities were too sporadic and insub-
    stantial to achieve adverse possession. [350-351]
In a proceeding to confirm title to a parcel of land, a Land Court judge
    did not err in drawing an inference of the existence of an unrecord-
    ed partition deed. [351-352]
In a proceeding to confirm title to a parcel of land, a Land Court judge
    was warranted in finding that the locus was encumbered by an
    easement even though the respondents did not specifically allege
    its existence in their pleadings. [352]

Petition filed in the Land Court on March 10, 1975.

Civil action commenced in the Superior Court on Oc-
tober 8, 1975.

On transfer of the second case to the Land Court, the
cases were heard together by *Sullivan, J.*

*Reginald L. Marden* for Robert E. West & another.
*Chester M. Howe* for S. Bailey Norton, Jr., & others.

---

[1] Drusilla N. Parks and Floyd C. Norton, also trustees of the N.P.N.
Trust.

[2] Dorothy M. West.

[3] The companion case is by Robert E. West, Dorothy M. West, Ar-
thur Gazaille, and Martha Gazaille against S. Bailey Norton, Drusilla
N. Parks, and Floyd C. Norton, trustees

KASS, J. In their trustee capacity, S. Bailey Norton, Jr., Drusilla N. Parks and Floyd C. Norton (petitioners) petitioned the Land Court to confirm their title to 51.54 acres of vacant land (the locus) in Edgartown. In reaction, Robert E. West, Dorothy M. West, Arthur Gazaille and Martha Gazaille (respondents) filed a complaint in Superior Court to establish their title to the same piece of land, relying mainly on a.claim of adverse possession, although also making a claim under color of title. On the petitioners' motion, the respondents' action was transferred to the Land Court, and the cases were tried together.

Trial consumed eight days, two of them in Edgartown. The evidence included a view of the locus, a Land Court examiner's title abstract, a survey, plans, *and testimony* from persons conversant with the locus and its use. From the evidence received, the judge made detailed findings of fact and conclusions of law. The judge found that: (1) record title was in the petitioners; and (2) the respondents had failed to establish adverse possession to the locus, particularly because their activities on the land in question "were occasional and intermittent and were either a spillover from those conducted on the West homestead [which is situated adjacent to the locus] or were . . . not done under a claim of right. Many of these were not open and notorious . . . ." Moreover, the judge found that no significant activities of the respondents began until after 1955, and since the filing of the confirmation case in 1975 stopped the running of any adverse possession, the respondents fell short of the twenty years required to attain title by adverse possession. *Shoer* v. *Daffe*, 337 Mass. 420, 423-424 (1958). *Ryan* v. *Stavros*, 348 Mass. 251, 262 (1964). *Shaw* v. *Solari, ante* 151, 155-156 (1979).

Although the judge concluded that the respondents could neither bar the confirmation of the petitioners' title nor prevail on their adverse possession claim, she found that the respondents had established an easement by prescription to use the way across the locus in a general north to south direction from their property on the south-

westerly side of Proprietors Road to a point on Meeting
House Road across from the Reynolds homestead. The
determination of that easement is the subject of cross
appeal.

We affirm the decision[4] and judgment of the Land
Court.

Of the seven issues identified by the respondents for
review, five dealt with the Land Court judge's findings of
fact. In reviewing findings of the Land Court in a confir-
mation proceeding, those findings must stand if warrant-
ed on any view of the evidence and all reasonable infer-
ences therefrom. *Lyon* v. *Parkinson*, 330 Mass. 374, 375
(1953). *Otis Power Co.* v. *Wolin*, 340 Mass. 391, 395-396
(1960). See G. L. c. 185, § 15. This is an even narrower
standard of review than the "clearly erroneous" test of
Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974), under which a
finding by a trial court "will not be deemed 'clearly er-
roneous' unless the reviewing court on the entire evi-
dence is left with the firm conviction that a mistake has
been committed." *New England Canteen Serv., Inc.* v.
*Ashley*, 372 Mass. 671, 675 (1977). *Building Inspector of
Lancaster* v. *Sanderson*, 372 Mass. 157, 159-160 (1977).
*Sanguinetti* v. *Nantucket Constr.Co.*, 5 Mass. App. Ct. 227,
228-229 (1977). We have examined the evidence with
care, and under either criterion the judge's findings of
fact are amply supported.

The respondents argue that the Land Court judge erred
as a matter of law in ruling that the respondents did not
have the benefit of the doctrine of color of title prior to
1959. Color of title, in the context of an adverse possession
claim, is an assertion of a claim of ownership based on an
instrument of title, such as a deed or lease, even though
that instrument does not pass a valid title. See *Attorney*

---

[4] As of the time of trial, (and continuing to date) confirmation of title
proceedings (G. L. c. 185, § 1[a]) were not subject to the Massachusetts
Rules of Civil Procedure, and the requirement of Mass.R.Civ.P. 58, as
amended, 371 Mass. 908 (1977), of the entry of a separate paper enti-
tled "judgment" was not applicable.

*Gen.* v. *Ellis,* 198 Mass. 91, 97-98 (1908). The advantage which a person may gain from that doctrine is that the activities relied upon to establish adverse possession reach not only the part of the premises actually occupied, but the entire premises described in a deed to the claimant. *Dow* v. *Dow,* 243 Mass. 587, 590 (1923). For example, if the act of adverse possession were cultivating a half acre parcel of land, but the claimant held an invalid deed describing three acres, the claimant would have constructive possession of the three acres for the reason that it is the presumed intention of the grantee of the deed to assert such possession. In this case, an invalid deed to a fractional interest in the locus had been delivered to a predecessor in title of the respondents. The respondents did not record a deed affecting the locus until 1959, and in the absence of other evidence, the judge found the date of delivery to be the date of recording, and that the respondents' color of title began at that time. But, the respondents say, citing G. L. c. 260, § 22,[5] they may tack on the activities of their predecessor in title. The respondents' proposition does not lead them anywhere, however, because of the judge's finding that their predecessor in title never entered upon the premises to exercise his claim of ownership and her finding that the respondents' own activities were too sporadic and insubstantial to achieve adverse possession.

In the course of attacking the findings below, the respondents urge that, under the recording statute (G. L. c. 183, § 4), the judge erred in giving effect to an unrecorded partition deed. It is precisely the duty of the Land Court judge in a confirmation proceeding, however, to unscramble an uncertain title, and the judge was entirely warranted in drawing the inference of the existence of an

---

[5] General Laws c. 260, § 22, provides: "If such right or title first accrued to an ancestor or predecessor of the person who brings the action or makes the entry, or to any other person under whom he claims, the twenty years shall be computed from the time when the right or title so first accrued."

unrecorded partition deed from the deeds of record and other physical evidence. Moreover G. L. c. 183, § 4, protects purchasers from conveyances which are not recorded and of which they have no notice. *Lamson & Co.* v. *Abrams*, 305 Mass. 238, 244 (1940). The respondents are not purchasers. Indeed, they themselves rely on activities not of record.

The petitioners appeal from that part of the decision of the Land Court which says the locus was encumbered by an easement in favor of the respondents. This challenge also attacks the judge's findings of fact. The findings in this portion of the Land Court judge's decision also find ample support in the evidence and there is no basis for disturbing the sound result which she reached. There is nothing to the argument, first advanced in an addendum to the petitioners' brief, that the respondents are not entitled to an easement because they did not specifically allege its existence in their pleadings. The entire purpose of these proceedings was to resolve competing claims to the locus, and the judge properly confirmed title on the basis of the facts ascertained at trial. This determination, not atypically, fell short of the extreme position of either party. The issue was fully tried by express or implied consent of the parties and, therefore, shall be treated in all respects as if it had been raised in the pleadings. See Mass.R.Civ.P. 15(b), 365 Mass. 761 (1974).

*Decision and judgment affirmed.*