PHILIP C. MACALLISTER & another[1] *vs*. VELIA DESTEFANO
& others.[2]

Barnstable. December 12, 1983. — April 23, 1984.

Present: GRANT, BROWN, & PERRETTA, JJ.

*Adverse Possession and Prescription.*

The grantees of a parcel of land under a 1971 deed, who entered upon the
parcel and for seven years cultivated a cranberry bog which had been
regularly cultivated since at least as early as 1941 by their predecessors
in possession, held title resting in adverse possession of the bog and the
surrounding area and, since the grantees' deed carried forward the same
description of the parcel that had appeared in predecessor deeds since
1911, their ownership extended to the entire parcel by reason of the
doctrine of color of title. [42-44]

PETITION filed in the Land Court Department on October
28, 1981.

The case was heard by *Randall, J.*

*Victor Brogna* for the defendants.
*Albert J. Schulz* for the plaintiffs.

PERRETTA, J.  The plaintiffs (Macallisters) brought a petition
in the Land Court under G. L. c. 185, § 1, seeking to register
and confirm title to a 4.6 acre parcel of land bordering Nye
Road and Ames Way in the Centerville section of Barnstable.
(A sketch of the parcel appears in an addendum to this opinion.)
The defendants objected, disputing the Macallisters' claim of
ownership to the northeast half of the parcel. The Land Court
examiner reported that the Macallisters did not have a "good
title as alleged and proper for registration" because of his
inability to determine the location of the boundary line between

[1] Patricia A. Macallister.

[2] Aurelia Rosetti, Michael Zamarro, Dora Alfano, Victor Zamarro, Hugo
Zamarro, Dante Zamarro, Jr., Charlene Fox, and Rosemary A. Zamarro.

the parcels. After trial, the judge concluded that the Macallisters had proved good record title suitable for registration as well as title by adverse possession. We do not reach the question of the Macallisters' record title because we agree that they have title to the land they claim by reason of adverse possession, and we affirm.

1. *Chain of Title.*

The Macallisters trace their title to the locus to a deed of September 22, 1883 (hereafter referred to as the source deed), from John B. Cornish to George F. Meiggs. According to this deed, the locus consists of "two and one half acres, the same more or less." The first course in the description, which is the subject of the present dispute, reads: "Beginning at a certain stake and stone on the road running to Lumbert's Mill thence running a *westerly* course by Woodland belonging to John B. Cornish to a stake and stone and land of Isaac Crocker, Jr." (emphasis supplied). This first course description was carried over by reference in deeds from Meiggs to Russell Marston, who then conveyed the locus to Sarah C. Meiggs, both deeds dated August 12, 1899.

There is no dispute as to the starting point (see sketch, at A) of the first course, and there is no dispute that were the first course description in these deeds literally followed, there would be no closure of the description of the parcel.

On August 30, 1911, Sarah C. Meiggs conveyed the land to Alfred A. Rosengren by a deed different from the source deed in two respects. First, although the land was still described as containing "two and one half acres, be the same more or less," the locus was described for the first time as "a certain piece of Cranberry Bog land and Woodland."[3] Second, and more significant, the 1911 deed recited a first course different from the one in the source deed. The disputed course was changed so as to read: "thence *Northerly* by said Cornish Woodland to a stake and stones set by Woodland now or formerly of

---

[3] There was no evidence presented from which it could be ascertained when, between 1883 and 1911, the cranberry bog came into existence.

Isaac Crocker's, Jr." (emphasis supplied). (See sketch, line segment AB.) This description was used in all subsequent deeds.[4]

With the course description change first made in 1911, there is enlargement of the locus to 4.46 acres with closure of ownership to the northeast portion (see sketch, area of triangle ABC) of the parcel.[5] Recognizing that the "westerly" course set out in the source deed results in nonclosure of the parcel description but contesting the "northerly" course recited in the 1911 deed, the defendants argue that the "westerly" description in the source deed should be interpreted to mean "northwesterly." The defendants' reading of the "source" deed would close the description at a point which would be in harmony with the "two and one half acres" recital of all the deeds. (See sketch, area of triangle ACD.)

In concluding that the Macallisters had proved good record title suitable for registration, the trial judge rejected the defendants' "northwesterly" reading of the source deed for the reasons, among others, that the disparity in acreage (two and one half acres and 4.46 acres) is "not so unusual in Cape descriptions"[6] and that the defendants' proposed boundary "would result in bisecting a pond and a cranberry bog . . . a highly unlikely event."[7] On the other hand, the plan filed by

[4] Rosengren to Victor Adams on September 16, 1941; Adams to John S. Harmon, et ux., April 15, 1968; the Harmons to the Macallisters on March 12, 1971. All the instruments of conveyance referred to in this opinion were recorded in the Barnstable County registry of deeds.

[5] The defendants filed a complaint to register and confirm title to the northeast portion of the locus. That case has not been tried and, even though not before us, it will of necessity be affected by our decision in the instant matter.

[6] In a conveyance by deed in which the land is bounded with certainty, the quantity expressed in the deed is immaterial, the boundaries set by description being regarded as conclusive. See *Powell* v. *Clark,* 5 Mass. 355, 356 (1809). See generally 4 Tiffany, Law of Real Property § 994 (3d ed. 1975); Park, Real Estate Law § 246 (2d ed. 1981).

[7] But as earlier noted, see note 3, *supra,* it is not known when, prior to 1911, the cranberry bog was cultivated. The owner of the land from 1941 to 1968, Victor Adams, see note 5, *supra,* testified that after World War II, he dug the "pond" which had been the "sand hole from which the original bog, I assume, was built and from which the three or four-year period sandings were done."

the Macallisters shows that the course described in the 1911 and subsequent deeds skirts the pond and bog and remains bounded by "Woodland belonging to John B. Cornish," a description carried forward from the 1883 deed and recited in the 1911 and subsequent deeds, whereas the defendants' line is not bounded by woodland.[8] We need not, however, consider these competing contentions, which relate to whether the Macallisters have record title suitable for registration, because we agree with the trial judge's finding that "there is ample evidence to prove title in the [Macallisters] by adverse possession."

2. *Adverse Possession of the Northeast Portion.*

The trial judge found that the cranberry bog was in full operation from "the conveyance in to Victor F. Adams from Alfred A. Rosengren on December 16, 1941," until 1978, when the Macallisters stopped their cultivation of the bog. In 1972, they built a house on the northeast corner of the locus, using it for their residence until 1979, from which time on they have rented it.

The trial judge concluded, based upon his findings (that have ample record support) concerning the cultivation and use of the bog by the Macallisters and their predecessors in title, see G. L. c. 260, § 22, that the bog and the surrounding area belonged to the Macallisters by adverse possession. See *Ryan v. Stavros,* 348 Mass. 251 (1964). He concluded that the Macallisters were, therefore, entitled to the entire locus by reason of the doctrine of color of title. As stated in *Dow* v. *Dow,* 243 Mass. 587, 590 (1923): "[W]here a person enters upon a parcel of land under a color of title and actually occupies a part of the premises described in the deed, his possession is not considered as limited to that part so actually occupied but gives him constructive possession of the entire parcel. The entry is deemed to be coextensive with the grant upon the ground that it is the intention of the grantee to assert such possession." See also *Norton* v. *West,* 8 Mass. App. Ct. 348, 351 (1979).

---

[8] The defendants argue that the absence of woodland from their plan is not an appropriate fact for consideration as their plan was prepared almost a century after the source deed.

The defendants make no argument that the trial judge's findings are clearly erroneous so far as they pertain to adverse possession of the bog and a thirty to forty foot area beyond it to the northeast. They do contend, however, that the Macallisters and their predecessors in title did not engage in actual, open, notorious, and continuous use of the area beyond that point until the Macallisters built their house in 1972. And the doctrine of color of title, the defendants continue, cannot be here invoked because the boundaries set out in the deed are indefinite and insufficient. See, e.g., *Bellows* v. *Jewell,* 60 N.H. 420, 422 (1880); *E. I. duPont de Nemours & Co.* v. *Moore,* 57 N.C. App. 84, 88 (1982). See generally 4 Tiffany, Law of Real Property § 1155 (3d ed. 1975).

It appears from the trial judge's decision that he gave the Macallisters the benefit of the doctrine because "they have in fact shown record title to at least a portion" of the locus. The trial judge's conclusion as to the Macallisters' record title, however, involves, in part, the 1883 description, which could be viewed as insufficient in its description of the first course as it results in nonclosure of the description. In their brief, the defendants cite the title examiner to support their claim of an uncertain and indefinite boundary: "[Y]our examiner is unable to determine the location of the boundary line of this land described in this petition." The defendants, however, have overlooked the introductory phrase of the examiner's statement, "By the terms of the description contained in *this* deed . . ." (emphasis supplied). A reading of the examiner's narrative summary as a whole reveals that the deed to which he refers is the source deed of 1883, Cornish to Meiggs.

Reliance on the 1883 deed, however, is misplaced. Application of the doctrine of color of title rests upon the deed to the claimants, the Macallisters. See *Dow* v. *Dow,* 243 Mass. at 590; *Norton* v. *West,* 8 Mass. App. Ct. at 351. See also Park, Real Estate Law § 711 (2d ed. 1981). Hence, the question is whether the description set out in the 1911 deed and carried forward in the Macallisters' deed is sufficiently certain for application of the doctrine of color of title.

No contention is made by the defendants that the boundary set by the 1911 deed is vague or indefinite. Rather, they contend that the boundary is wrong, primarily because it increases the quantity of land described in all the deeds. But see note 6, *supra*. Their argument begs the question because it is the very claim of mistake which calls into play the doctrine of color of title. See, e.g., *Norton* v. *West,* 8 Mass. App. Ct. at 351.

The plan recorded by the Macallisters shows that the boundary in dispute closes the description at the only point to the east of the line claimed by the defendants, skirts the bog referred to in the 1911 deed, and meets monuments matching those described in that deed.[9] Although the defendants concede that grantees take according to a plan where it is recorded soon after a conveyance (see *Blaney* v. *Rice,* 20 Pick. 62 [1838]; Park, Real Estate Law § 244 [2d ed. 1981]), they argue that this rule should not hold where, as here, the plan is prepared by the grantees-adverse possessors. Compare *Blaney* v. *Rice,* 20 Pick. at 64, where the grantor prepared the plan after the deed had been executed. We think that any element of bootstrapping in the Macallisters' reliance on their plan is well overcome by the fact, in addition to those immediately above recited, that the line set in the 1911 deed is bounded by woodland as described in the 1883 source deed. Accordingly, we conclude that the Macallisters are entitled to register and confirm title to the entire parcel shown on their plan, as they proved title by adverse possession under color of title of their deed.

*Decision affirmed.*

---

[9] The plan refers to a disk in a concrete bound, whereas the deed reference is to "a stake and stones." However, William C. Nye, a registered land surveyor, testified that during preparation of the plan in question, stones were found at the point of closure.