NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

14-P-14                                              Appeals Court

ROBERT L. PAINE, trustee[1] & another[2] vs. CHELLISE L. SEXTON[3] & another.[4]


No. 14-P-14.

Suffolk.     April 2, 2015. - September 23, 2015.

Present: Milkey, Brown, & Massing, JJ.


Land Court, Registration proceedings. Real Property, Registered land, Adverse possession, Record title, Deed. Adverse Possession and Prescription. Deed, Description. Practice, Civil, Summary judgment, Motion to amend.


Civil action commenced in the Land Court Department on February 10, 1999.

The case was heard by Alexander H. Sands, III, J., and motions for summary judgment were heard by him.


Albert J. Schulz for the defendants.
Sarah Turano-Flores for the plaintiffs.


--------

[1] Of the Land Steward Trust.

[2] Sheila L. Paine, trustee of the Land Steward Trust.

[3] Individually and as trustee of Parcel 164 Nominee Trust.

[4] David Sexton, trustee of Parcel 164 Nominee Trust.

BROWN, J.  This case causes us to examine a novel treatment of the law of adverse possession and presents difficult concerns with a color of title claim as well.  On review we conclude the judge's resolution of both issues in favor of the plaintiffs is sustainable, and the well-crafted arguments of the defendants do not persuade us otherwise.  Accordingly, we affirm the judgment entered by the Land Court judge.

The plaintiffs seek to register approximately thirty-six acres of predominately woodland located in Wellfleet.  In their petition for registration, they asserted claims based on record title and adverse possession.[5]  For their claims of adverse possession, they assert nonpermissive use of portions of the property for more than twenty years in a manner that was actual, open, notorious, exclusive, and adverse.  See Kendall v. Selvaggio, 413 Mass. 619, 621-622 (1992).  In addition, based on deeds purporting to convey title to them, they claim adverse possession under color of title to portions of the locus where they cannot show actual use.  See Norton v. West, 8 Mass. App. Ct. 348, 350-351 (1979).  In response, the defendants contend that the plaintiffs cannot establish their claim of adverse possession of any portion of the wooded parcels because they

---

[5] The plaintiffs have abandoned their claims of record title to the parcels in dispute in this appeal, relying instead exclusively on their claims of adverse possession.

have not enclosed them or reduced them to cultivation, see Senn v. Western Mass. Elec. Co., 18 Mass. App. Ct. 992, 993 (1984), and in any event the deeds under which they claim color of title are inadequate in description to support such a claim.

The case proceeded in the Land Court in two stages. The adverse possession claim was tried first and the judge concluded that the plaintiffs' use of portions of the property was sufficient to support a claim of adverse possession. Thereafter, the parties submitted summary judgment motions on the color of title issue. Again, the plaintiffs prevailed. We address the two issues in turn.

Adverse possession. The plaintiffs or their predecessors (plaintiff Robert L. Paine's parents) have operated a commercial campground on the locus since approximately 1958. To that end, they have created roadways and cleared campsites while still maintaining the natural environment. They have placed picnic tables, fire rings, and campsite numbers on the campsites seasonally and have built a house, erected two toilet facilities and an office building, enlarged parking areas, and created a volleyball pit, a paddock, and play areas. They constructed a wall of railroad ties along the road frontage, and fencing comprised of iron pipes and wires, from which they hung "no trespassing" signs, around much of the campground. However, the fencing and walls did not enclose the entirety of the

campground. The plaintiffs controlled entry to the locus -- charging an amount per person -- and ousted those who did not pay. The plaintiffs also advertised the campground with signage along the highway, and in newspaper advertisements and brochures distributed in local stores. In addition, they have paid taxes on the property since the 1960s; however, it is unclear exactly which parcels the plaintiffs paid taxes on because many of the bills do not delineate lot numbers and acreage. The campground is operated seasonally and houses approximately 500 individuals during the summer weekends and fewer individuals during the weeks. Individuals bring their own tents and campers.

Despite the plaintiffs' extensive use of portions of the property, however, they have not enclosed it entirely with fencing, or reduced it to cultivation. Indeed, as the defendants observe, the plaintiffs maintained areas between individual campsites in a predominantly natural state, for privacy and to preserve the wooded condition of the area. Accordingly, the defendants contend, the plaintiffs have not satisfied the strict rule applicable to a claim of adverse possession of wild or woodland. See Cowden v. Cutting, 339 Mass. 164, 168 (1959); Senn v. Western Mass. Elec. Co., supra. "The strict rule applicable to wild or woodlands is, however, but an application of the general rule to the circumstances presented by wild or uncultivated lands. That is to say, the

nature of the occupancy and use must be such as to place the lawful owner on notice that another person is in occupancy of the land, under an apparent claim of right; in the circumstances of wild and unimproved land, a more pronounced occupation is needed to achieve that purpose." Sea Pines Condominium II Assn. v. Steffens, 61 Mass. App. Ct. 838, 848 (2004).[6] "[T]he determination whether a set of activities is sufficient to support a claim of adverse possession is inherently fact-specific." Ibid. See LaChance v. First Natl. Bank & Trust Co., 301 Mass. 488, 490 (1938).

In the circumstances of the present case, in which the plaintiffs operated the locus as a commercial campground advertised as such, improved the site by clearing campsites and constructing roadways, toilet buildings, and an office, and restricted access to paying customers, we are satisfied that the judge was correct in his assessment that the plaintiffs' use was sufficient to place the record owners on notice that the plaintiffs occupied the locus under a claim of right.[7] See Kershaw v. Zecchini, 342 Mass. 318, 321 (1961).

_____

[6] We note as well that seasonal use may be adequate to establish adverse possession. See Kershaw v. Zecchini, 342 Mass. 318, 321 (1961); Lebel v. Nelson, 29 Mass. App. Ct. 300, 302 (1990).

[7] In this regard, we note that the judge took a view of the site during the camping season and was thus able to observe

Color of title.  Pursuant to the doctrine of color of title, "the activities relied upon to establish adverse possession reach not only the part of the premises actually occupied, but the entire premises described in a deed to the claimant."  Long v. Wickett, 50 Mass. App. Ct. 380, 382 n.3 (2000), quoting from Norton v. West, 8 Mass. App. Ct. at 351. "The entry is deemed to be coextensive with the grant upon the ground that it is the intention of the grantee to assert such possession."  Macallister v. DeStefano, 18 Mass. App. Ct. 39, 42 (1984), quoting from Dow v. Dow, 243 Mass. 587, 590 (1923). Most of the deeds relied on by the plaintiffs to support their color of title claim refer, in order to help locate the lots, to lot numbers on assessors' maps originally created in 1964.[8]

To support their claim of color of title, the plaintiffs rely on seven deeds, each recorded with the Barnstable County registry of deeds.  Each of the seven deeds includes reference to the assessors' maps of the town of Wellfleet for assistance in locating the parcel conveyed.  In their challenge to the plaintiffs' claim, the defendants contend that the assessors' maps provide inadequate description of the lots to support a

firsthand the extent to which the defendants were placed on notice of the adverse use.

[8] The maps were revised periodically between 1964 and 1993, but for simplicity we refer to them as assessors' maps.

claim of color of title.  The defendants' argument is flawed in several respects.

Most of the deeds relied on by the plaintiffs contain metes and bounds descriptions in addition to their reference to the assessors' maps.  Some of those descriptions are stated by metes and bounds, while others are stated by reference to abutting parcels.  Such descriptions are typical of those validly used to describe and convey property, and we see no reason why a supplemental reference to the assessors' maps should derogate from the validity of the more detailed description contained in the deeds.  In any event,

> "[a]n assessor's plan, which shows the particular lot in connection with all neighboring lands, affords a definite and accurate description.  It is easily found.  It is open to public inspection at reasonable times under rational limitations. . . .  As a practical matter it affords quite as certain and accessible information to anybody in interest as does a plan in the registry of deeds."

Larsen v. Dillenschneider, 235 Mass. 56, 57 (1920).

The defendants also contend that the judge impermissibly engaged in fact finding to resolve disputed questions of fact, rejecting their expert's affidavit asserting that the parcels cannot be located on the ground based on the deed descriptions with any degree of certainty.  We disagree.  In his decision on the color of title issue and judgment, the judge did not determine the precise boundaries of the parcels based on the

deed descriptions.[9]  Instead, he reviewed the deed descriptions to determine which parcels they described in general terms, compared the plaintiffs' campground use to the parcels described in the deeds, and entered a judgment declaring that the plaintiffs' claim of adverse possession extended to the boundaries of the parcels described in the deeds under which they held an apparent (though possibly flawed) record title, under the doctrine of color of title.  The judge was entitled to reject, as matter of law, the defendants' expert's assertion that the deed descriptions cannot possibly be located on the ground in any circumstances.  See Hicks v. Brox Indus., Inc., 47 Mass. App. Ct. 103, 107 (1999) (on summary judgment judge properly rejected expert's opinion as invalid and unreliable).

Other issues.  We discern no abuse of discretion in the judge's denial of the defendants' motion to file a second amended answer, in which they sought leave to supplement their claims of title to portions of the disputed property with fractional interests they had acquired.[10]  However, the defendants did not file their motion to file a second amended

---

[9] Such a determination, and resolution of any conflicts that may arise with abutting property owners, remain for further proceedings in the Land Court before a decree of registration may issue.

[10] Based on their fractional interests, the defendants sought to argue that the plaintiffs were required to satisfy the more stringent requirements for ouster of a cotenant.  See Allen v. Batchelder, 17 Mass. App. Ct. 453, 455-456 (1984).

answer until two years after the trial on the adverse possession claim, and the judge did not abuse his discretion rejecting it on grounds of timeliness.

Finally, in the exercise of our discretion we decline the plaintiffs' request for appellate attorney's fees. Though we agree with the plaintiffs that the defendants' appeal is without merit, it is not frivolous.

<u>Judgment affirmed</u>.