NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-32

CARLA MONTEIRO

vs.

SHANTI ACQUISITIONS, LLC.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Defendant Shanti Acquisitions, LLC, appeals from a Land Court judgment quieting title to the property located at 48 Hansborough Street, in the Dorchester neighborhood of Boston (locus), in plaintiff Carla Monteiro and declaring that she established title to that property by reason of adverse possession.  The defendant argues on appeal that the plaintiff did not carry her burden of demonstrating open and notorious use of the locus or that her use was exclusive and adverse.  The defendant also argues that the plaintiff did not sufficiently identify the locus boundaries.  We affirm.

_____

[1] As is our usual practice, we take the parties' names as they appear in the operative complaint.

Background.  The judge held a two-day virtual trial and conducted a view of the locus and adjacent properties.  We summarize the facts that the judge could have found.

The locus is an undeveloped lot of approximately 4,000 square feet.  The western boundary of the locus abuts two other lots, 476 and 480 Harvard Street.  The Poindexter family, the plaintiff's predecessor in interest, resided at 480 Harvard Street beginning in 1968.  Sometime after 1971 a fire destroyed the adjacent home on 476 Harvard Street, after which the residents vacated the property.  The Watts family occupied a house on the locus until it burned down in 1978.  The Poindexters thereafter took possession of both Harvard Street lots and the locus.  In 1996, the City of Boston granted formal title of 476 Harvard Street to the Poindexters in exchange for nominal consideration.  That year, the Poindexters also installed a fence that enclosed both Harvard Street properties and the locus.

At trial, members of the Poindexter family testified about their use of the locus before it was sold to the plaintiff in 2010.  Margaret Evans was about thirteen when the Poindexters moved into 480 Harvard Street.  Her mother, Nellie Poindexter, maintained a garden on the locus from 1999 to 2003.  Thomas Poindexter was sixteen when they moved in.  He testified that his parents regularly maintained the locus during his childhood,

2

by cutting the grass, for example, and by hosting occasional family barbecues there. After college he returned home to live with his mother from 1990 to 2010, during which time he maintained the locus by mowing the grass, watering the tree, and raking leaves.

In 2010, Nellie Poindexter sold 476 Harvard Street (now comprising both Harvard Street properties) to the plaintiff. The plaintiff testified that her family also regularly maintained the locus from 2010 onward by mowing the lawn and clearing snow. She also described some irregular maintenance work, such as hiring landscapers to fill in a dip near the driveway, clearing out debris, and cutting down a tree when its roots began to damage the driveway. The plaintiff's family, and sometimes her tenants, used the driveway on the locus for parking their cars.[2] The plaintiff's son and his friends played basketball "all year-round" using a basketball hoop located on the pavement, played soccer on the grassy area, and the son rode his bicycle around the entire property. They also had parties on the locus, including putting up "moon bouncers" there. The plaintiff maintained "keep out" and "no trespassing" signs on

_____

[2] To the extent the defendant's repeated references to a "shared driveway" is intended to suggest that the plaintiff shared the driveway with the record owner of 48 Hansborough Street, or with any third party other than her own family members and residents of 476 Harvard Street, the evidence does not support such an inference.

the fence, and would close the gate to the driveway at times, such as when her son was playing basketball; however, the hinge to the gate broke, and some months to a year before trial the plaintiff removed the gate and stored it behind the tree on the locus awaiting repair.

On September 25, 2019, the defendant acquired a quitclaim deed to the locus from the estate of Gloria Watts. The defendant then posted a sign on the plaintiff's fence announcing the defendant's intention to file for a variance to build on the property. Upon taking notice of the sign, the plaintiff filed a complaint in the Land Court seeking to establish title to the locus via adverse possession.

Discussion. The parties agreed to proceed under Rule 14 of the Rules of the Land Court (2017). Accordingly, they waived detailed findings of fact and rulings of law and stipulated that appellate review would be based on the standard of review that "would apply to a verdict by a jury in a case tried to a jury and the judgment entered thereon." Rule 14(a), (c) of the Rules of the Land Court. "We therefore review to determine whether anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the [prevailing party]" (quotation omitted). K & K Dev., Inc. v. Andrews, 103 Mass. App. Ct. 338, 344 (2023) (interpreting similar Rule 20 of

4

the Rules of the Superior Court [2018]).  Under this standard of review, we will not set aside the judgment unless it "has no rational basis in the evidence."  Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582, 595 (2007).

Acquiring title to property by adverse possession requires "proof of nonpermissive use which is actual, open, notorious, exclusive and adverse for twenty years."  Ryan v. Stavros, 348 Mass. 251, 262 (1964).  "The burden of proving adverse possession is on the person claiming title thereby and 'extends to all of the necessary elements of such possession.'"  Lawrence v. Concord, 439 Mass. 416, 421 (2003), quoting Mendonca v. Cities Serv. Oil Co. of Pa., 354 Mass. 323, 326 (1968). "Whether, in a particular case, these elements are sufficiently shown is essentially a question of fact."  Brandao v. DoCanto, 80 Mass. App. Ct. 151, 156 (2011), quoting Kershaw v. Zecchini, 342 Mass. 318, 320 (1961).

1.  Open and notorious.  The defendant argues that the plaintiff failed to establish open and notorious use of the locus because the evidence showed only sporadic upkeep and maintenance.  "The extent of openness and notoriety necessary for the acquirement of title by adverse use varies with the character of the land."  Tinker v. Bessel, 213 Mass. 74, 76 (1912).  The general test asks whether a reasonably diligent

5

landowner would discover the use. See Boothroyd v. Bogartz, 68 Mass. App. Ct. 40, 45 (2007). To prevail on an adverse possession claim, the possessor must use the property "as the average owner would use it . . . irrespective of the possessor's actual state of mind or intent." Ottavia v. Savarese, 338 Mass. 330, 333 (1959).[3]

The evidence at trial permitted the judge to find that the plaintiff and the Poindexters before her maintained the locus regularly since 1978 and enclosed it with a fence in 1996. They performed regular maintenance, such as mowing, removing snow, making repairs, cutting down a tree, and planting a garden. The evidence supported the judge's conclusion that the plaintiff's usage was in line with that of an average owner. See Miller v. Abramson, 95 Mass. App. Ct. 828, 833-834 (2019) ("relatively passive use" consisting of typical suburban lawn care occurring on continuous basis satisfied requirements of adverse possession); MacDonald v. McGillvary, 35 Mass. App. Ct. 902, 904

---

[3] When asked whether it was ever his intention to keep the record owner out, Thomas Poindexter answered, "No, sir. We weren't aware of any record owner. But if there was, they could have came to us. But no, we never intended to keep any owner off the property." Whatever the plaintiff's predecessor's intent, it is irrelevant to whether their occupation of the locus put the record owner on notice of the adverse use. See Air Plum Island, Inc. v. Society for the Preservation of New England Antiquities, 70 Mass. App. Ct. 246, 252 (2007) ("The mentalities or intentions of the parties are immaterial to the issue of nonpermissive use. The material fact is the conduct of the possessor" [citation omitted]).

(1993) (actual use consisting of "little more than maintenance of a suburban lawn" sufficient to establish adverse possession).

Moreover, in addition to the evidence of regular maintenance, the Poindexters erected and the plaintiff maintained a fence surrounding the locus and incorporating it into the plaintiff's property, complete with "no trespassing" and "keep out" signs. The fence put the record owner on notice that the plaintiff was making adverse use of the locus. See Kendall v. Selvaggio, 413 Mass. 619, 624-625 (1992) (evidence that possessors added fence without consent, planted bushes and trees along fence, and "in other ways acted as if they claimed the land as their own" put true owner on notice and supported claim of adverse possession); Poignard v. Smith, 6 Pick. 172, 178 (1828) (fence around land constituted act of notoriety sufficient for constructive notice); Miller, 95 Mass. App. Ct. at 831-832 (vegetative boundary which allowed for easy identification of openly used land provided adequate notice). The evidence of the fence, together with the plaintiff's use and maintenance of the locus, amply supported the judge's determination that the use was open and notorious.

2. Exclusivity. The defendant also contends that the plaintiff's use was not exclusive because the fence was in disrepair and accordingly failed to exclude all third persons from the locus.

7

A claimant's use is exclusive for purposes of establishing adverse possession "if such use excludes not only the record owner but 'all third persons to the extent that the owner would have excluded them.'" Brandao, 80 Mass. App. Ct. at 158, quoting Peck v. Bigelow, 34 Mass. App. Ct. 551, 557 (1993). "Acts of enclosure or cultivation are evidence of exclusive possession." Labounty v. Vickers, 352 Mass. 337, 349 (1967). The degree of occupation necessary to establish adverse possession is fact specific and differs with the circumstances of the surrounding landscape. See Miller, 95 Mass. App. Ct. at 831-832; Paine v. Sexton, 88 Mass. App. Ct. 389, 391-392 (2015).

The defendant argues that exclusive use requires exclusion of all third parties, and therefore the fence's inability to prevent neighbors from occasionally crossing through the locus casts doubt upon the plaintiff's adverse possession claim. We disagree. Such sporadic and minor trespasses do not preclude finding exclusive use, especially given the locus's location in an urban neighborhood. Exclusivity does not require absolute exclusion, only that the possessor exclude "all third persons to the extent that the owner would have excluded them." Peck, 34 Mass. App. Ct. at 557. Indeed, the plaintiff posted "keep out" and "no trespassing" signs to deter such behavior. See Paine, 88 Mass. App. Ct. 391-392 (affirming finding of adverse possession where plaintiffs improved property, hung "no

8

trespassing" signs, and built fences but did not enclose entire locus).

3. Adverse. The defendant argues that the Poindexters' use was not adverse because they maintained their garden with the record owner's knowledge and permission. However, the record contains no testimony that compelled the judge to find that the owner was aware of the garden. As proof of the record owner's knowledge, the defendant points to Evans's testimony that while her mother was gardening, "the person who lived there" would visit with her. As this occurred between 1999 and 2003, after the house at 48 Hansborough Street burned down, Evans most likely was not referring to the record owner. Her brother's testimony confirmed that the neighbors in question were the residents of 44 Hansborough Street, the property adjacent to the locus. "It is not sufficient to challenge the judge's findings by reciting other evidence in the record that [the judge] may not have credited." Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 637 (2010).

4. Failure to identify boundaries. We need not dwell on the defendant's argument, apparently raised for the first time on appeal, that the plaintiff failed to prove the boundaries of the locus. The plaintiff's complaint described the disputed property as "48 Hansborough Street, Dorchester," with references to book and page numbers recorded in the registry of deeds. The

special verdict form and judgment, respectively, described the property as "48 Hansborough Street, as shown on Exhibit 9," and "48 Hansborough Street in the Dorchester neighborhood of Boston, with 40 feet of frontage on Hansborough Street and containing 4,000 square feet of land, more or less, as shown on a plan marked as Exhibit 9 at the trial."  As the description of the locus was clear and unambiguous, further specificity, such as a metes and bounds description, was unnecessary.

<u>Judgment affirmed</u>.

By the Court (Blake, Massing, & Hand, JJ.[4]),

*Joseph F. Stanton*

Clerk

Entered:  November 1, 2023.

---

[4] The panelists are listed in order of seniority.